**STATE of Missouri, Respondent,**

v.

**Roger Kevin MUNSON, Appellant.**

**No. 67959.**

Supreme Court of Missouri,
En Banc.

July 15, 1986.

Rehearing Denied Sept. 16, 1986.

**518**

Loren R. Honecker, Springfield, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin, John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

Governments at all levels are engaged in an apparently losing battle against "controlled substances," variously known as drugs, narcotics, and "dope." In the possibly wishful thought that it would aid in the battle, the Missouri General Assembly, in 1982, adopted portions of the "Model Drug Paraphernalia Act."[1] This is our first case dealing with the 1982 legislation.

The defendant, Roger K. Munson, was the proprietor of a store in Springfield known as Impulse General Store. It is charged in the information that he

unlawfully possessed with the intent to deliver drug paraphernalia, to-wit: cocaine kits, cocaine spoons, manitol (sic) cutting agent, smoking devices, roach clips, and other numerous items, which

he knew, or reasonably should have known, would be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body, a controlled substance or an imitation controlled substance.

He waived a jury and stood trial before Judge Donald E. Bonacker, who found him guilty as charged. The trial judge set out his detailed findings in a helpful opinion. Munson was sentenced as a prior offender to a term of eight years.

He appeals, alleging: (1) that the statute is so vague and overbroad as to deprive persons in his position of liberty and property without due process of law; (2) that the evidence was prejudicially tainted by an unlawful search; and (3) that the evidence does not support the conviction. It is because of the first allegation that we have initial appellate jurisdiction. We find no basis for reversal in any of the appellant's points, and affirm the conviction.

### 1. Vagueness and Overbreadth

The defendant argues that the statutes provide "neither fair notice of what conduct is prohibited nor explicit standards for enforcement."

The punitive provisions are set forth in § 195.020.3, RSMo Supp.1984, as follows:

It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an

1. Model Drug Paraphernalia Act (United States Justice Department) (reprinted in Annot., 69 A.L.R.Fed. 15, 20–22 (1984) ).

imitation controlled substance in violation of this chapter.

Section 195.010(11), RSMo Supp.1984, sets forth a lengthy definition of "drug paraphernalia," which follows in pertinent part and with emphasis supplied:

**"Drug paraphernalia"** means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance or an imitation controlled substance in violation of this chapter. It includes, but is not limited to:

(a) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(b) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances or imitation controlled substances;

\* \* \* \* \* \*

(e) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances or imitation controlled substances;

(f) Diluents and adulterants, such as quinine hydrochloride, *mannitol,* mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances or imitation controlled substances;

(g) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana;

(h) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances or imitation controlled substances;

(i) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances or imitation controlled substances;

(j) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances or imitation controlled substances;

\* \* \* \* \* \*

(1) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

a. *Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes* with or without screens, permanent screens, hashish heads, or punctured metal bowls;

b. *Water pipes;*

c. Carburetion tubes and devices;

d. Smoking and carburetion masks;

e. *Roach clips* meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

f. *Miniature cocaine spoons and cocaine vials;*

g. Chamber pipes;

h. Carburetor pipes;

i. Electric pipes;

j. Air-driven pipes;

k. Chillums;

l. *Bongs;*

m. Ice pipes or chillers.

\* \* \* \* \* \*

The state concedes that all, or nearly all, of the listed articles may have uses not related to illegal controlled substances. Subsection (11) goes on to list matters which the trier of the fact may consider in *determining whether a particular item* "is drug paraphernalia," in the following language:

In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(a) Statements by an owner or by anyone in control of the object concerning its use;

(b) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance or imitation controlled substance;

(c) The proximity of the object, in time and space, to a direct violation of this chapter;

(d) The proximity of the object to controlled substances or imitation controlled substances;

(e) The existence of any residue of controlled substances or imitation controlled substances on the object;

(f) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who * he knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to direct violation of this chapter shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

(g) Instructions, oral or written, provided with the object concerning its use;

(h) Descriptive materials accompanying the object which explain or depict its use;

(i) National or local advertising concerning its use;

(j) The manner in which the object is displayed for sale;

(k) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

($l$) Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

(m) The existence and scope of legitimate uses for the object in the community;

(n) Expert testimony concerning its use;

Similar statutes have consistently been held to be valid, as against charges of unconstitutional vagueness.[2] Most of the cases involve challenges to the facial constitutionality brought in advance of prosecution. Some involve regulatory or licensing statutes which do not provide criminal sanctions. Because the defendant's challenge comes in the setting of a criminal prosecution, we examine his contentions at length.

■ He complains because the statutory enumeration of evidentiary factors which may be considered is not exclusive. The fallacy in this argument is that a criminal statute seldom lists the evidentiary considerations which may be appropriate. The trier of the fact, then, may make use of such items of direct and circumstantial evidence as may be admissible, relevant and material. Certainly the legislature's opinion as to the value of certain items of evidence is entitled to substantial weight, but the ultimate question of the sufficiency of evidence is one for the courts to decide.[3]

---

**2.** *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Garner v. White,* 726 F.2d 1274 (8th Cir.1984); *Casbah v. Thone,* 651 F.2d 551 (8th Cir.1981); Annot., *Validity Under Federal Constitution of So-Called "Head Shop" Ordinances or Statutes, Prohibiting Manufacture and Sale of Drug Use Related Paraphernalia,* 69 A.L.R.Fed. 15 (1984). A misdemeanor conviction was sustained in *People v. Nelson,* 171 Cal.App.3d Supp. 1, 218 Cal.Rptr. 279 (1985).

**3.** Courts, for example, will not sustain convictions that have been based on statutory presumptions when there is no rational relationship between the presumed fact and the evidence. *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1969) (allowing the jury to infer the possession of imported heroin from proof that the defendant possessed heroin but not allowing a similar inference in regard to cocaine); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1968) (determining that possession of marihuana is not sufficient to presume that the possessor knew it was unlaw-

The statute is not impermissibly vague because of the listing of evidentiary factors.

▇▇▇ Most of the defendant's remaining arguments about vagueness are flawed by overemphasis on the listed evidentiary factors. One complaint is that the statute does not say how many of these factors must be shown. There is no need to specify a number. Quality is more important than quantity. The ultimate question for the trial and reviewing courts is whether the record, without regard to the statutory enumeration, contains "substantial evidence" supporting each essential element of the offense charged. The suggestion that some of the listed factors are themselves vague, for this reason, demonstrates no ground for holding the statute unconstitutional. A factor which is impermissibly vague may simply be disregarded in analyzing the sufficiency of the evidence to support the judgment. There is no requirement that the verdict of a jury, or of the court in a jury-waived case, list the evidentiary factors considered.

▇▇▇ The strongest protest is directed at the statutory permission to consider expert testimony. Expert testimony may be admitted, when proper foundation has been laid, without express statutory authority. The ultimate purpose of the statute is to deny users easy access to equipment which is helpful in facilitating the use and enjoyment of illegal substances. Certainly the testimony of persons familiar with the methods of using these substances may be received to help unfamiliar judges and jurors in learning about the items which give rise to the charges.

▇▇▇ It is next argued that the statute defines a scienter requirement on the part of a consumer (used), a retailer (intended for use), or a manufacturer (designed for use), but does not say which of the listed evidentiary factors applies to each of these scienter requirements. Here again particularization is not necessary. An item does not constitute "drug paraphernalia" unless it comes under one of the three specifications of the statute. We now hold that a person may not be convicted of violation of § 195.020(3) unless he knows that an item of merchandise meets at least one of these three tests. This knowledge may be established by any relevant and material evidence tending to prove the fact which must be established. The application of the scienter requirement to the facts in evidence will be discussed in Part 3 of this opinion.

This statute has some similarity to our statute punishing the knowing possession of burglar tools.[4] It is settled law that an item may be a burglar tool even though it has innocent and proper uses.[5] Whether the possession violates the statute depends on the intent of the possessor. The statute warns him that he must not possess the tools with unlawful purpose. The actual intent of the possessor is a matter of evidence.

The defendant cites *McKinney v. Commonwealth* (Ky.App. Dec. 13, 1985), holding a somewhat similar drug paraphernalia statute unconstitutional. That case is complicated by factors not present here. The police had apparently given clearance to the sale of items in a store in which the defendant owned a part interest, and undertook prosecution only after he entered into a political campaign against an incumbent. His connection with the operation of the store was not clear from the evidence. Because of these extraneous factors, which greatly concerned the court, the case is not

---

fully imported); *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) (statutory inference which allowed defendants' presence at a still to be considered sufficient evidence to show the defendants' possession of the still was held invalid because it was unreasonable), *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) (holding a presumption that a person obtained a gun through interstate commerce based on proof of past convictions to be unreasonable); *see also, United States v. Boucher,* 509 F.2d 991 (8th Cir.1975).

4. Section 569.180, RSMo 1978.

5. *See State v. Adkins,* 678 S.W.2d 855 (Mo.App. 1984), describing the history of the current statute.

good authority for a holding of facial un-constitutionality.

 The portion of the statute under which the defendant is charged speaks of "possession with intent to deliver ...," if the possessor knows or "reasonably should have known," that the item would be used in connection with the unlawful use of controlled substances. The legislature, then, has introduced negligence concepts into a statute defining a felony, and in this respect it is unusual; but, when coupled with the scienter requirements considered in Part III, it is not beyond the legislature's powers. The legislators obviously thought that there was a serious problem and sought to put people who deal in drug paraphernalia on notice that they take substantial risks. The language is effective to supersede the provisions of the Criminal Code relating to mental state.[6]

 We are unable to say that the statute does not give persons in the position of the defendant notice of what they must do in order to comply with the law. Similarly, we believe that the statute limits the discretion of law enforcement officers, rather than promoting arbitrary searches, as the discussion of the search warrant in part 2 of this opinion will demonstrate.

We therefore reject the claims of unconstitutional vagueness and overbreadth.[7]

### 2. *Unlawful Search and Seizure*

On February 7, 1984, Officer Richard C. Wells of the Springfield Police Department, who possessed expert knowledge about illegal controlled substances by reason of study and law enforcement experience, visited the premises of the Impulse General Store. He purchased three books entitled *Marijuana Growers Guide, The Book of Acid,* and *The Pleasures of Cocaine.* He also purchased a "coke spoon necklace." He saw cocaine kits, coke spoons, mannitol,[8] small coke bottles, pipes of different designs, and roach clips. He had seen some articles similar to those sold in the store used in connection with cocaine and marijuana. The books told how some of these items might be used in the enjoyment of cocaine.

He again went to the store on February 13, 1984 and noticed that the items observed on his previous visit were still there for sale. He bought 12 "coke bottles" and a small funnel.

On February 14, 1984, Officer Wells applied for and obtained a search warrant, tendering affidavits detailing his visits and the articles purchased and observed. The

---

**6.** Sections 562.016, 562.021 and 562.026, RSMo 1978, deal with the required mental state for crimes committed under the Criminal Code. (Chapters 556–600 RSMo). Section 556.031 states, in pertinent part (emphasis added):
1. The provisions of this code shall govern the construction and punishment *for any offense defined in this code.* ...
The drug paraphernalia laws are not part of the Code. Since these laws were enacted after the Code, it can be assumed that the legislature knew what the law was and could choose to adopt portions of the Code, if desirable. Indeed, the penalty portion of the drug paraphernalia law simply refers to a violation of § 195.-020.3, RSMo Supp.1984, as a class D felony. Section 195.200(5), RSMo Supp.1984. By not specifically providing a different punishment from that given for other class D felonies, the legislature implicitly referred to the Code provisions. In regard to mental state, however, the legislature specifically provided a different standard than that present in the Code. Thus, no reference to the Code can be implied.

**7.** The claim of "overbreadth" is not appropriate in this case, because no infringement of First Amendment rights is claimed. "[T]he overbreadth doctrine does not apply to commercial speech." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982); *see, Garner v. White,* 726 F.2d 1274 (8th Cir.1984).

**8.** Webster's Third New International Dictionary (1981) defines *mannitol* essentially as follows:
A slightly sweet crystalline hexahydroxy alcohol ... used chiefly in the form of the hexanitrate and in aqueous solution for intravenous administration as a diagnostic test of kidney function.
This definition has no reference to illegal use, but Officer Wells described mannitol as a "cutting agent". Judge Bonacker observed that, on the label of a bottle of mannitol which was available for purchase at the store, "a female was shown in the position for sniffing cocaine from a miniature cocaine spoon."

warrant described the articles to be seized as follows:

> the following controlled substance(s),[9] to-wit: any material, products, or equipment which is used, intended to be used, or designed for use in connection with the manufacture, distribution, or use of any controlled substance or imitation controlled substance, or that other constitutes drug paraphernalia within the meaning of RSMo 195.010(11), *a copy of which is attached and incorporated herein by reference;* any business records pertaining to the sale of the above-described items and other description materials, instructions or advertising relevant to the determination of whether an item is drug paraphernalia pursuant to RSMo 195.010(11), ... (Emphasis supplied).

The search was carried out immediately by a party of officers and many articles were seized and carted away. Officer Wells discussed articles of paraphernalia with the other officers and logged the items which were actually taken from the store. No illegal controlled substance, or residue of illegal controlled substance, was found on the premises or on any of the items inspected.

The defendant argues that the warrant was a prohibited general warrant, violative of the Fourth Amendment to the Constitution of the United States, reading as follows: (Emphasis supplied)

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*

and the comparable provisions of Article I, Sec. 15 of the Missouri Constitution. *See also* § 542.276.6, RSMo 1984 Supp.

---

**9.** (Writer's note). This statement is carelessly inserted. The statute does not identify "paraphernalia" as "controlled substances."

The form of the warrant is not to be commended. A proper warrant must describe the "things to be seized." Without the addendum the warrant would clearly be invalid. It would be so much better if the warrant had simply listed the items which Wells said that he had seen on his two visits to the store. In the setting of this case, however, we do not consider reversal necessary. The statute was attached, and was expressly incorporated into the warrant by the reference. It describes explicitly several of the articles observed by Wells on his two visits, and, at the very least, provided clear authority for the seizure of these articles. Had the statute been less specific or detailed in its descriptions, there would be a much more serious problem.

We agree with the defendant's argument that a search warrant must leave nothing to the discretion of the officers who execute it, but rather must contain a clear command.[10] The state misses the mark in arguing that "the officers could use the factors and exemplary list to determine what is or what is not drug paraphernalia." The incorporated statute gives the warrant vitality only because it specifically lists the very items on which the charges focus. We do not find any violation of basic principles simply because an uninitiated person might not be able to identify an item specifically described. The writer, for example, had no idea what bongs and roach clips looked like before he examined the exhibits in this case. But the specification is sufficient to exclude other items, and the warrant does not fail simply because a person with specialized knowledge may have to identify the listed articles. *Cf. Romano v. Squier,* 133 F.2d 528 (9th Cir. 1943).

It is very possible that some of the items seized were not properly described in the warrant. The trial judge, indeed, partially sustained the motion to suppress.

---

**10.** *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

There are also indications that the officers seized items not covered by the warrant and not seizable as contraband. Had this been a jury case, reversal might very well have been required, inasmuch as the weight the jury might have accorded improperly seized items could not be determined. The trial judge, however, listed specifically the articles he relied on in making his findings of guilt, which are those charged in the information. These were clearly described in the statute and, for the most part, were observed by Wells before he obtained the warrant. We find no prejudice simply because the trial judge may have observed other articles which may not have been validly seized. Unauthorized or excessive seizures; and damage to the premises, are matters of civil concern which do not impair the validity of these proceedings.

Wells's testimony, indeed, when coupled with the items he purchased, might be sufficient to demonstrate violation of the statutes, without the need for exhibiting any additional items to the court. All were held out for sale and were in plain view in the store.

The state argues that, even if the warrant was deficient, the officers were acting in good faith and so exclusion is not required under *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Because we find that the warrant was not invalid as to the items relied on by the trial judge, we need not reach this argument. We caution officers and magistrates about assuming that they may prepare warrants cavalierly, in the assumption that suppression can be avoided by a bare assertion of "good faith." The constitutional and statutory requirements must be observed.

### 3. *Sufficiency of the Evidence*

The defendant next argues that the evidence is insufficient to support the trial court's judgment. By our Rule 27.01(b) the findings of the trial judge in a jury-waived case have the force and effect of a jury verdict. The trial court's opinion explains his reasoning, in more detail than a jury verdict would, and also facilitates review by standing in substitution for instructions by expounding the legal assumptions which underlie the judgment.[11]

The offense defined by the statute has three essential elements, as follows:

(1) That the defendant possessed with intent to deliver one or more of the items charged in the information;

(2) That he knew that the item or items so possessed were designed or intended for use for one or more of the purposes set forth in § 195.010(11).[12]

(3) That the defendant knew or reasonably should have known that the item or items so possessed would be used in one or more of the ways detailed in § 195.020(3).

The first element is established by the defendant's holding the items out for sale in a store. By § 195.010(12), to "deliver" includes to "sell."

The second element is also supported by the evidence. The defendant's own testimony sufficiently establishes, as to at least some of the items which the trial judge included in his findings, that he knew those items were designed for use for one or more of the purposes set forth in § 195.010(11). There is no requirement that the defendant himself have the intent to use, or design the product for use, in connection with controlled substances.

The record also supports the trial judge's conclusion that the defendant "reasonably should have known" that items for sale in his store would be used as drug paraphernalia. He knew their purpose, and held them out for sale to such members of the public as might be interested.

11. We do not have to accept or agree with all of the trial judge's findings as set out in his opinion, so long as they cover the essential elements of the case and do not demonstrate misunderstanding of the governing legal principles.

12. There is no evidence in this record that any item was actually so "used."

The defendant was operating the Impulse General Store at the time the statute became effective, and stocked similar merchandise. He sought the advice of a lawyer as to whether he could continue to operate the store in his accustomed way, and, to put it mildly, did not obtain reliable clearance sufficient to show an absence of criminal intent. He caused signs to be posted stating that articles were not intended for illegal use and that merchandise would not be sold to a purchaser who indicated or implied that he intended to use it illegally. His employees were instructed to give effect to the declared policy. Some customers were turned down because they gave indication of illegal use, and the defendant refused to repair a pipe which he may have felt had been used for smoking marijuana. He also established a policy of not selling merchandise in the challenged area to persons under 18, even though he was willing so sell other merchandise in the store to them. The trial judge considered that such circumstances demonstrated that the defendant was aware of the design and potential of certain of his merchandise for illegal use. The finding is proper under the evidence.

The trial judge detailed some of the circumstances which he considered significant. Among these are the following: (1) the presence of books for sale, describing the use of the merchandise in connection with controlled substances;[13] (2) the sale of articles in combination (kits) with instructions for illegal use; (3) the display of the items in a particular section of the store, in plain view of persons as they were checked out. There was expert testimony as to how the merchandise was sometimes employed in the use of controlled substances. We also consider the continuity of the business and the sheer volume of suspect merchandise highly significant.

The defendant argues that the state has not adequately proved the essential element of scienter. The trial judge made a conjunctive finding as follows:

Thus, the Court finds the items described above were drug paraphernalia and that Defendant possessed them with an intent to deliver them knowing they would be used illegally and under circumstances where Defendant reasonably should have known they would be used illegally.

The defendant's attitude and state of knowledge are well illustrated by his own testimony in responding to his counsel's questions, as follows:

Q. Let me ask you whether, at any time, you sold any item which you knew would be used to plant, propogate (sic), cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, ingest, inject, inhale or otherwise induce into the human body a controlled substance or an imitation controlled substance? Did you do that?

A. It's impossible to know.

Q. Now, then, I want to ask you whether, at any time, with regards to those items and the uses alleged in the charge, in your judgment you reasonably should have known that any item you sold would be used for such purposes?

\* \* \* \* \* \*

THE WITNESS: I have reasonable— or consideration that it could be used, but I did not have any way of knowing that it would be used.

▆▆ We conclude that the finding that the defendant "reasonably should have known" that the items listed would be employed in the illegal use of controlled substances is amply supported by evidence. The defendant had no means of control over what his customers did with their purchases. He could not bind them to his instructions. The standard, as we have previously observed, is essentially one of negligence, but, because of the other ele-

---

13. Familiarity with the titles is a significant circumstance, even though it is not shown that the defendant had read any of the books. *Cf.*

*State v. Schamma,* 659 S.W.2d 589 (Mo.App. 1983); *State v. Ward,* 512 S.W.2d 245 (Mo.App. 1974).

ments which must be proved, the negligence begins with an awareness of the problem. The defendant had been in business for over a year during which the statute was in effect before he was charged. He recognized that there was a risk of unlawful use. He made numerous sales. The proportion of the challenged merchandise to total volume of sales need not be shown.[14] The portion of the finding as to what the defendant reasonably should have known is amply supported, and it is not necessary to analyze the defendant's actual knowledge about what his customers did with their purchases.

More than 50 years ago, Judge Merrill E. Otis of the United States District Court for the Western District of Missouri decided the case of *United States v. Brunett*, 53 F.2d 219 (W.D.Mo.1931). The defendants were charged with violation of the prohibition laws in the shipment of refrigerated grape juice from California. The following exchange took place when the president of the producer took the witness stand.

"Q. What were your instructions to customers relative to the treatment of this product?

A. To simply stand the cask in an upright position in the home, the dry part of their home, and do nothing to it whatever for a period of sixty days, at the end of which time it should be clear, and if they so desire they can then bottle it and use it, but they must, however, pasteurize it in order to prevent it from obtaining an illegal alcoholic content."

*Id.* at 228.

The court analyzed this testimony as follows:

The defendant company sold its preparation to the home owner, taught him in great detail exactly what to do to transform that preparation into an alcoholic beverage, and, having told him exactly

what to do, bade him not to do it, but to pasteurize the preparation so that alcohol might not develop in it. ...

*Id.* at 239.

The court found the defendants guilty, concluding that the product was "intended for use" and "designed for use" as an alcoholic beverage. The defendants were not permitted to hide behind the advice to pasteurize.

This defendant complains of the absence of evidence of the intent of any particular customer. The circumstances are adequate to support the charges without such evidence. The defendant was understandably interested in moving his merchandise. The trier of the fact could have found that he well realized the potential market among illicit drug users in the community, and was indifferent to his customers' use of their purchases so long as they did not discuss their use with him. The trial judge might also have found that the defendant's policy against selling for known unlawful use was designed to protect himself, as, possibly, against undercover agents, and not because of any desire to prevent unlawful use.

We are left with the feeling that the statute was adopted with operations such as the defendant's in mind. It cannot be said that, following the effective date of the statute, he was the proprietor of an ordinary, lawful business, so that he was entitled to explicit guidelines about what he had to do to continue to operate as in the past. The statute rendered the operation suspect. If he chose to continue his business after the effective date, he took a substantial risk of an adverse finding at the hands of a court or jury. The statute is a severe one, and the punishment is harsh. The enhanced sentence, however, is within the statutory prescriptions,[15] and authorized punishment is within the discretion of

---

14. The evidence showed that the challenged merchandise constituted 15 percent of the inventory, and occupied up to one-fourth of the store. The defendant testified to a gross of $50,000–60,000 for the quarter before the police raid.

15. Section 195.200(5), RSMo Supp.1984 and § 558.016, RSMo Supp.1984. The defendant had two previous convictions, both related to drugs: (1) a 1973 felony conviction for possession of more than 35 grams of marihuana, and (2) a 1983 felony conviction for possession of psilocybin.

the legislature.[16] We have the obligation to make sure that people are not convicted on inadequate proof for the innocent possession of articles which may have a proper and harmless use. Here, however, the proof was sufficient to show the defendant "reasonably should have known." We might also doubt that this statute will be of substantial effect in controlling drug problems, but the choice is the legislature's and not ours.

The judgment is affirmed.

HIGGINS, C.J., and BILLINGS, DONNELLY, ROBERTSON and RENDLEN, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The Fourteenth Amendment to the United States Constitution provides that no citizen shall be deprived of "life, liberty, or property, without due process of law; . . . ."

> And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

*Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

I find the statutes, § 195.020.3, RSMo Cum.Supp.1984; § 195.010(11), RSMo Cum. Supp.1984, defining the crime of possession of drug paraphernalia too vague for men of *common* intelligence to agree on their meaning.

The number of words required to explain and ascertain their meaning renders the statutes suspect. Such overreaction to the current drug problem can quickly erode the basic fibers of our constitutional safeguards.

---

**16.** *State v. Mitchell,* 563 S.W.2d 18 (Mo. banc 1978). The writer does not necessarily accept

all the implications of this holding, but it seems to represent the firm position of the Court.