**STATE of Missouri, Plaintiff–
Respondent,**

v.

**William Wayne DEGRAFFENREID,
Defendant–Appellant.**

No. 18894.

Missouri Court of Appeals,
Southern District,
Division One.

May 31, 1994.

Douglas A. Hosmer, Asst. Public Defender, Springfield, for defendant-appellant.

Millie Donohoe, Asst. Pros. Atty., Greene County, Springfield, for plaintiff-respondent.

SHRUM, Judge.

William Wayne Degraffenreid (Defendant) was charged in a two-count information with criminal nonsupport of his two minor daughters between May 1, 1991, and January 31, 1992. § 568.040, RSMo Supp.1990. Adjudged guilty in a nonjury case, he appeals. We affirm.

### FACTS

By a divorce decree dated April 22, 1986, Defendant's former wife was awarded custody of the two children involved in this case: Stephanie, born December 13, 1978, and Christina, born June 2, 1981. In addition to "reasonable visitation," Defendant was awarded "visitation" every weekend but the first weekend of each month, six weeks each summer, and certain holidays. Defendant was ordered to pay support of $100 per month per child for the two daughters.

The former wife testified that between May 1, 1991, and January 31, 1992, she received no money from Defendant for the support of Stephanie or Christina as required by the decree, and she testified that during the period for which he was charged Defendant did not contribute to the clothing, medical, food, and housing needs of the two daughters, other than to provide them food and lodging during his weekend and summer visits with them. Records of the circuit clerk's office placed in evidence show no child support payments from Defendant during that period.

The former wife testified that on the occasions she saw Defendant during the period for which he was charged, "He's always got a cigarette in his mouth." She testified that she, too, smokes, and that "[i]f you buy a name brand, it will run you close to $2 a package sometimes."

Called by the state to testify, Gloria Degraffenreid, Defendant's mother, said she and her Aunt Pearl paid for Defendant's telephone and other utilities and that Defendant lived rent-free in a house owned by Aunt Pearl. In exchange, Defendant helped his mother with odd jobs and assisted in the care of Aunt Pearl who, as of the date of trial, was 101 years old and bedfast. Defendant's mother said Defendant owned three motor vehicles, only one of which, a 1975 Chevrolet Vega, was capable of operation. Defendant's mother said he paid for his own food.

As of the date of trial, August 11, 1992, Defendant was 41 years of age. Witnesses acquainted with him testified he had no physical disability and appeared to be in good health. His former wife testified that during their marriage Defendant worked at Zenith Radio Corporation. In 1984 he earned between $23,000 and $25,000 with Zenith. However, he was fired from Zenith in 1985. Regarding his education, the former wife said that Defendant had attended Missouri Southern College at Joplin, taken some

courses at Southwest Missouri State University, and received electronics training at Zenith. She testified that before their divorce but while separated Defendant had told her, "I'll never pay child support.... When you give away a dog ... you don't expect to pay for its food the rest of its life."

Pamela Hoovery, an employee of a Venture store, produced records showing that Defendant worked for that firm as an "early-morning stocking" employee between November 29, 1990, and April 20, 1991. He was "terminated" from that job for "absence and tardiness" after the "corrective process" was "exhausted."

Angela Degraffenreid, Defendant's other daughter by the former wife, was called as a state's witness. She testified she lived with Defendant in the house owned by Aunt Pearl from August 1990 until August 1991. Asked if Defendant looked for jobs during that time, she answered, "Yeah.... He would type resumes up and send them out." Continuing, she testified, "He did send quite a few [resumes] at first. Most of the time it was waiting for calls...." Angela said Defendant went to an unspecified number of job interviews while she was living with him.

Defendant testified that in September 1985 he was "terminated" from his job as superintendent of quality control at Zenith. After leaving Zenith, he sought employment elsewhere by mailing resumes, registering with employment agencies, and doing research through job magazines. Despite such efforts, his only employment between September 1985 and April 1991 was his work at Venture where his total net pay for the four and one-half months he was there was less than $1,200. After leaving Venture the only work he found was lawn mowing from which he earned about $30 per month after expenses.

Defendant confirmed his mother's testimony about working in exchange for his housing and payment of his utility bills. He said he purchased his food with food stamps and that on "several occasions" he took food to his daughters at his former wife's home. Asked if he supported Stephanie and Christina during his periods of visitation with them, he responded, "Food, clothing, lodging, transportation."

Defendant testified that three months prior to the August 1992 trial he began receiving "AFDC"[1] because his son now lived with him. Regarding his smoking, Defendant testified he smoked only generic cigarettes. "I guess I buy probably about one carton a month if I'm lucky. And that—I never pay more than $6. Usually, I can find them for $4 a carton."

After the reception of all evidence, the state argued to the trial court that Defendant had purposely maintained an inability to support his children.

## STANDARD OF REVIEW

In each of his three points relied on, Defendant alleges that the evidence was insufficient to support the finding of guilt. In a jury-waived case, the trial court's finding of guilt has the force and effect of a jury verdict. Rule 27.01(b); *State v. Barnett,* 767 S.W.2d 38, 39[1] (Mo banc 1989). Consequently, we review this case as though a jury had returned a verdict of guilty. *State v. Giffin,* 640 S.W.2d 128, 130[1] (Mo.1982). The standard for appellate review of the sufficiency of the evidence to support a criminal conviction was stated by our supreme court in *State v. Dulany,* 781 S.W.2d 52 (Mo banc 1989):

> "On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt."

*Id.* at 55[2–3]. Moreover, there must be evidence to support each element of the offense charged. *State v. Munson,* 714 S.W.2d

---

1. Presumably Aid to Families with Dependent Children.

515, 521[4] (Mo banc 1986) (cited in *Barnett*, 767 S.W.2d at 39–40).[2]

## DISCUSSION AND DECISION

Defendant was charged and convicted under § 568.040, RSMo Supp.1990, which provides, in pertinent part:

"1. A ... parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his minor child or his stepchild.[3]

"2. For purposes of this section:

. . . .

"(2) 'Good cause' means any substantial reason why the defendant is unable to provide adequate support. Good cause does not exist if the defendant purposely maintains his inability to support;

"(3) 'Support' means food, clothing, lodging, and medical or surgical attention;

. . . .

"3. The defendant shall have the burden of injecting the issues raised by subdivisions (2) and (4) of subsection 2."

▆▆ Missouri's criminal nonsupport statute "is predicated upon the theory that both parents have a legal obligation to look after and provide for their offspring, and that the failure to perform that obligation, without good cause, is a punishable offense against the state." *State v. Davis*, 469 S.W.2d 1, 3[1] (Mo.1971) (applying § 559.353, RSMo 1969, predecessor to the current criminal nonsupport statute).

**2.** In two of his three points on appeal, Defendant relies on the "circumstantial evidence rule" to support his argument that the evidence was insufficient to support his conviction. In *State v. Grim*, 854 S.W.2d 403, 405–08 (Mo banc 1993), the Missouri Supreme Court invalidated the circumstantial evidence rule as an exception to the *"Dulany* standard." Thus we review under the *Dulany* standard as set out in the body of this opinion.

**3.** In 1993 the legislature amended subsection 1 by substituting "child or stepchild who is not otherwise emancipated by operation of law" for "minor child or his stepchild," a change that does not affect this case.

**4.** § 556.051, RSMo 1986, provides:

In his first two points on appeal Defendant charges that the trial court erred in convicting him of criminal nonsupport because the state's evidence was insufficient to prove that he "had the ability to provide support for his children" (Point I) or that he "willfully brought about his inability to provide support for his children" (Point II). A premise underlying Points I and II is that, as one of the elements of its case, the state had to prove beyond a reasonable doubt that his failure to support was, as stated in § 568.040.1, without good cause. Defendant's underlying premise is incorrect, however, for we have concluded he did not carry his burden, under § 568.-040.3, of injecting the issue of good cause.

Under Missouri's Criminal Code, when a defendant has the "burden of injecting" an issue, the issue is not submitted to the trier of fact unless supported by evidence. § 556.-051(1).[4] *Compare State v. Quisenberry*, 639 S.W.2d 579, 582–85 (Mo banc 1982). *See also* MAI–CR3d 304.02 (9–1–90 Revision), Notes on Use 10, and MAI–CR3d 322.08, Notes on Use 3 (10–1–92 Revision to Notes on Use only).

▆▆ Under the § 568.040.2(2) definition of "good cause" set out above, to inject the good cause issue Defendant was required to introduce evidence that he was unable to provide adequate support for his two daughters and that there was a substantial reason for his inability to do so. Defendant's emphasis at trial on evidence of his unemployment and his efforts to obtain work was an understandable response to the state's theory that he purposely maintained an inability to support his children.[5] Evidence of his

"When the phrase 'The defendant shall have the burden of injecting the issue' is used in the code, it means

(1) The issue referred to is not submitted to the trier of fact unless supported by evidence; and

(2) If the issue is submitted to the trier of fact any reasonable doubt on the issue requires a finding for the defendant on that issue."

**5.** Under § 568.040.2(2), proof that a defendant purposely maintained his inability to support his children would defeat a claim of good cause. That the state, in this case, shouldered a burden it did not need to bear, i.e., negating a claim of good cause when the issue was not yet in the case, did not relieve the defendant of the burden of injecting the issue.

unemployment alone, however, was not sufficient to inject the good cause issue into the case.

■ The absence of earnings from employment does not absolve a nonsupporting parent of his or her obligation to support if that parent has other assets that are readily available but which he or she willfully withholds. The ability to provide support is not based solely on one's current earnings. *State v. Mehaffey*, 534 S.W.2d 563, 564 (Mo. App.1976) (citing *State v. Godines*, 9 Wash. App. 55, 510 P.2d 835, 837[8, 9] (1973)). If the rule were otherwise, a financially successful parent with substantial real and personal assets, but who without fault on his part is unable to secure employment for a wage, could be said to not have the ability to support his children and thereby have good cause not to support them. *Mehaffey*, 534 S.W.2d at 564. Such a result would scarcely serve the objective of § 568.040, which is "to compel recalcitrant parents to fulfill their obligations of care and support." *State v. Nichols*, 725 S.W.2d 927, 928 (Mo.App.1987) (citing Comment to 1973 Proposed Code following § 568.040, 40A V.A.M.S. at 836 (West 1979)).

■ The state and Defendant provided ample evidence that Defendant kept his living expenses at a minimum before, during, and after the period charged. However, at no time did Defendant present evidence that he lacked the means, apart from his lack of employment income, to support his daughters. The fact that Defendant apparently was qualified to receive food stamps does not, of itself, constitute sufficient evidence that he was unable to provide adequate support.

■ We are left to speculate about whether Defendant had "real estate, personal property, bonds, and other money, of values and in amounts constituting independent assets

6. Defendant's argument about the state's burden of proving the absence of "good cause" is based entirely on opinions that apply versions of the criminal nonsupport statute that predate the January 1, 1979, effective date of the original version of § 568.040. Those earlier versions of the criminal nonsupport statute did not place on the defendant the burden of injecting the issue of good cause.

and means with which to provide support for his children." *Mehaffey*, 534 S.W.2d at 564. In *Mehaffey*, there was evidence about the nature and extent of the defendant's assets. However, *Mehaffey* involved application of § 559.353, RSMo 1969, under which it was not the defendant's burden to inject the good cause issue. Under the current criminal nonsupport statute, it was Defendant's burden to introduce evidence about his lack of assets in order to inject the good cause issue.

■ Because Defendant failed to adduce sufficient evidence to inject the "good cause" issue, it was not an issue to be submitted to the trier of fact. § 556.051(1), RSMo 1986. Consequently, the state was not required to prove that Defendant's failure to provide adequate support for his children was without good cause. § 556.051(2), RSMo 1986.[6] It follows that Points I and II lack merit. They are denied.

In Point III, Defendant claims the state "failed to meet its burden of proving that [Defendant] failed to provide adequate support for his children." For case-law authority, Defendant relies exclusively on *Nichols*, 725 S.W.2d 927, in which the court reviewed the sufficiency of the evidence in light of the circumstantial evidence rule. As earlier noted, our review is under the *Dulany* standard.

■ Shorn of its reliance on the circumstantial evidence rule, Defendant's argument becomes, as he states in his brief, "The evidence showed clearly that [Defendant] provided some kind of support for his minor children for six weeks of every summer and on three weekends of every month." Whether the "some kind of support" provided by Defendant is "adequate support" as required by § 568.040.1 is a question of fact. *See State v. Arnett*, 370 S.W.2d 169, 173 (Mo.App. 1963).

The only case Defendant cites that applies § 568.040 is *Nichols*. In *Nichols*, however, whether the defendant had injected the existence of good cause was not an issue. Because *Nichols* was reviewed under the circumstantial evidence rule, the appeal was resolved on the basis of the absence of direct evidence that the defendant provided no support to his daughter by some means other than payments to the mother or into the court registry. 725 S.W.2d at 930[4].

The evidence favorable to the state was that Defendant paid no decretal child support to his former wife and no support money into the registry of the circuit court during the period for which he was charged and that he made no contribution to the two daughters' food, clothing, lodging, and medical or surgical needs when the girls were residing with their mother. The gist of Defendant's argument is that because he fed and housed his daughters during the times when he was exercising his right of visitation pursuant to the decree of dissolution, his obligation of providing adequate support was somehow satisfied or negated. Such is not the support obligation of a parent in this state. We conclude that there was sufficient evidence from which the trial court could have found that Defendant did not provide adequate support for Stephanie and Christina during the period for which he was charged.[7] Point denied.[8]

We affirm the judgment of the trial court.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

7. Defendant makes no argument concerning the sufficiency of the evidence to prove the "knowingly" mental element of § 568.040.1, RSMo Supp.1990.

8. Even if *Nichols* had not been resolved by application of the circumstantial evidence rule, that case would not aid Defendant. In *Nichols*, there was no evidence that the defendant did not contribute support to his daughter who, during the

period charged, was a college student who resided in a dormitory on campus, apparently in a town other than where the mother lived. 725 S.W.2d at 928–29. In contrast, in the case before us Defendant's daughters resided with their mother during the period charged. Thus the former wife was competent to testify—and did so—about the absence of support provided the girls by Defendant.