STATE of Missouri, Respondent,

v.

Robert LATALL, Jr., Appellant.

No. SC 89322.

Supreme Court of Missouri,
En Banc.

Dec. 16, 2008.

Daniel Dodson, Jefferson City, Mo, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Doug Noland, Greg A. Perry, Ashley Harms, Office of Missouri Attorney General, Jefferson City, MO, for Respondent.

MICHAEL A. WOLFF, Judge.

### Introduction

Robert Latall's appeal of his misdemeanor nonsupport conviction raises the question of whether Latall "injected the issue" of good cause, within the meaning of the statute, thus requiring the state to prove beyond a reasonable doubt that he lacked good cause in failing to pay child support.

This is a criminal case. Unlike a civil action for child support, the criminal statute places a burden on the state to prove its case beyond a reasonable doubt. The question of whether Latall injected the good cause issue into the case is an issue of law. From this Court's review of the record, Latall as a matter of law injected the issue of good cause into the case because his contention was "supported by evidence."

The defendant having injected good cause, the state's evidence is reviewed for sufficiency. The evidence introduced by the state as well as the defendant's own testimony is insufficient to prove beyond a reasonable doubt that the defendant lacked good cause for failing to pay child support.

### Facts

Latall was charged by information with the class A misdemeanor of criminal nonsupport in violation of section 568.040 [1]. At trial, Latall testified in his own defense and indicated that, at the time that he ceased making child support payments in 2004, he was unemployed.

Latall originally worked for Natsch & Company, a sheet metal company in Cole County, where Latall held a management position, made a "hundred-some-thousand a year," and had a 401(k) valued at one time at $180,000. Latall left Natsch for a job in Kansas City, accepting that job offer over two competing offers from sheet metal companies. The Kansas City company closed shortly after employing Latall. Latall then reapplied to the two other companies, but both positions had been filled. Latall applied "at every place [he] could" in Kansas City but was unable to find work in his field. Finally, Latall took a carpentry job making $10 per hour. Throughout this time, Latall continued to make child support payments.

In September 2004, after several unsuccessful attempts at finding employment in

---

1. All statutory references are to RSMo 2000 unless otherwise specified.

the sheet metal field, Latall withdrew a total of $72,000 from his 401(k) in order to buy a bar in Grain Valley, outside of Kansas City. Latall testified that at the time he purchased the bar, the bar was not making money. Since purchasing the bar, Latall has not been able to turn a profit, although he offered no financial records to confirm that testimony. Latall purchased a home in Grain Valley at the time he opened the bar, but he could not afford the payments on the home, so he sold it and moved into a smaller house. Latall was unable to make payments on the smaller home. The bank then foreclosed. After losing his home, Latall moved into a room in the bar.

Latall testified that he has tangible assets including some furniture and his truck, which are valued at a total of less than $3,000. He sometimes employs four persons to work in the bar, although he often works alone because he cannot afford to pay employees. Latall testified that he works 18 hours a day and eats sandwiches made at the bar. He has received shutoff notices for the gas and electric bills for the bar and has paid part of a $3,219 utility bill to keep the utilities turned on. At trial, the child's mother testified that since entry of the support order in February 2000, she has received $58,878.56 in child support payments, all made before Latall's recent unemployment and venture into the bar business.

The trial court found Latall guilty and sentenced him to two years of unsupervised probation. Latall was ordered, as a condition of probation, to offer the court five job contacts for prospective employment and to make $800 monthly payments to the child's mother. Latall failed to meet the requirements, and his probation was revoked. The court imposed a 90–day jail term but suspended execution of the sentence and placed Latall on two addi-tional years of supervised probation. He again was ordered to make $800 monthly payments. Latall appealed his conviction, arguing that he had good cause for his failure to pay because of his financial inability to pay child support. After opinion in the court of appeals, this Court granted transfer and has jurisdiction. Mo. Const. art. V, section 10.

## Analysis

■ The criminal nonsupport statute is straightforward as to the definition of the crime and the meaning of "good cause." The procedural aspects of the law—in particular, what it means for a defendant to "inject" the issue of good cause and the consequent burden on the state to prove the lack of good cause—can be a source of confusion. Section 568.040.1, the definition of the crime of nonsupport, provides that a parent commits the crime "if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law."

The statute states that " '[g]ood cause' means any substantial reason why the defendant is unable to provide adequate support. Good cause does not exist if the defendant purposely maintains his inability to support." Section 568.040.1(2).

On the procedural question raised by this appeal, the statute mandates that "[t]he defendant shall have the burden of injecting the issues [of good cause]." Section 568.040.3. The general statute applicable to this crime and others, section 556.051, specifies the meaning of "injecting the issue" as follows:

When the phrase "The defendant shall have the burden of injecting the issue" is used in the code, it means (1) The issue referred to is not submitted to the trier of fact unless *supported by evidence;*

and (2) If the issue is submitted to the trier of fact *any reasonable doubt on the issue requires a finding for the defendant on that issue.* (emphasis added). This Court has described the "supported by the evidence" requirement in subdivision (1) for injecting an issue as analogous to the requirements for meeting the "burden of production." *See State v. Strubberg,* 616 S.W.2d 809, 816 (Mo. banc 1981) (discussing the requirements for injecting an issue and holding that "defendant merely has the burden of production or the burden of injecting the issue ... into the case," referring to section 556.051, quoted above).

"The term 'burden of production' tells a court which party must come forward with evidence to support a particular proposition, whereas 'burden of persuasion' determines which party must produce sufficient evidence to convince a judge that a fact has been established...." 29 Am.Jur.2d *Evidence* Section 171 (2008).

■ Subdivision (2) of section 556.051 places the burden of persuasion on the state. Once the defendant has injected the issue of good cause, section 556.051 imposes on the state the burden of proving, beyond a reasonable doubt, that the defendant did *not* have good cause for failing to make support payments. To paraphrase the statute, any reasonable doubt as to the

issue of whether the defendant did not have good cause must result in acquittal.

In its analysis, the state misinterprets the burden imposed by the statute. The state argues that because there was no *substantial evidence* of good cause, the issue of good cause was not injected into the case. In so reasoning, the state makes two errors. First, the state collapses the statutory definition of "good cause" and the evidentiary burden of proof spelled out in section 556.051. Section 568.040.1(2) defines "good cause" as meaning a *substantial reason* for failure to pay. The state has combined that definition with the statutory burden of persuasion in section 556.061, which requires proof beyond a reasonable doubt—the substantial evidence requirement to which the state mistakenly refers. Second, it follows from this error that the state would place the burden of persuasion on the wrong party. This burden actually rests on the state, not the defendant. Section 556.061.

The defendant does not have to produce substantial evidence of good cause to inject the issue. Nor must the defendant prove good cause with substantial evidence. Defendant's burden is merely to produce evidence of good cause. Once that is done, the state must prove that the defendant did *not* have good cause and must do so beyond a reasonable doubt.[2]

---

**2.** The dissent points to the criminal jury instruction's mandate that "good cause does not exist if the defendant purposely maintains his inability to support." MAI CR3d 322.08. The dissent concludes that the evidence indicating that Latall purchased a failing business and has not yet succeeded in reviving that business "allows the reasonable inference that he purposely maintained his inability to provide adequate support." This interpretation of the facts would be appropriate were it the case that Latall was *not* attempting to revive the business, that he had purchased a failing business without any hope or intention of ever making it succeed. As is the case in

the *State v. Nelson* decision discussed below, the "purposely maintained" language of the instruction is targeted at defendants who willfully maintain unemployment or a lack of income with the purpose of avoiding child support. 463 S.W.2d 614, 617 (Mo.App. 1971). Latall is, in fact, doing quite the opposite of purposely maintaining his inability to provide child support. He is working 18–hour shifts and attempting to produce income adequate to support both himself and his child. "Purposely maintains" is an intent instruction and is not one appropriately invoked to support a conviction in Latall's case. The purpose of the criminal nonsupport stat-

In the present case, the trial court did not enter findings of fact, nor did Latall request them. During sentencing, the trial court's only comment about Latall's financial condition was as follows:

> Well, I don't want to dabble in business practices, but it's not necessarily true [that if Latall was "forced to walk away from that business, he is just utterly screwed"]. He needs to walk away from that investment and still be employed in the field in which he's trained, which is a highly-paid field. I know he testified about how dangerous it is to have managers, ones that you can trust, but that might be the only solution to attempt to get somebody to run that business so you don't lose it. And work there as much as you can. But also find—show that you're making sincere efforts to find employment in the lucrative field in which you're trained.

The trial court expressed no legal conclusion as to whether the issue of good cause had been injected. The issue of whether the defendant met his burden of production is a question of law, not of fact, and as such, this Court reviews that issue *de novo*. *See* 29 AM.JUR.2D *Evidence* Section 171 (2008). ("Whether a party has satisfied its burden of production is not an issue of fact for the jury; it is an issue of law.").

In this case, Latall did produce evidence of good cause for failure to pay. Latall provided uncontroverted testimony that he is heavily in debt and has no income, given the unprofitability of his bar. Latall's evidence was that he cannot afford housing and cannot afford to pay the full cost of utilities at his bar. He often staffs the bar without assistance because he cannot afford full-time support staff. Latall also testified that he had tried to pursue other avenues of employment, seeking a number of sheet metal jobs after his employing company collapsed, but to no avail. The trial court's commentary, quoted above, addresses the wisdom of Latall's investment in the bar. The burden of production on the issue of good cause does not require an analysis of the soundness of the defendant's financial decisions but merely evidence showing that the defendant does not have the means to pay support.

The state relies heavily on *State v. Degraffenreid*, in which the court held that although the defendant had offered proof of lack of income, there had been no evidence concerning other assets that might have been used to pay support. 877 S.W.2d 210, 214 (Mo.App.1994). The state in *Degraffenreid* offered evidence that the defendant lacked good cause to justify his nonsupport, including testimony from the defendant's former wife that the defendant had said that he would "never pay child support." *Id.* at 213. The court concluded that the defendant had failed to adduce sufficient evidence to have injected the issue of good cause. *Id.* at 214. Under the statutory scheme, however, the *Degraffenreid* court misapplied the law, though it came to a correct result. It is clear that the defendant in *Degraffenreid* injected the issue of good cause into the case, and—in affirming the trial court's findings—it is equally clear that the state carried its burden of proving that the defendant lacked good cause. The question of the defendant's burden is not a question of sufficiency but is, in the words of the statute, an issue of whether the defen-

---

ute is not to prohibit parents from attempting to better themselves economically, even if some risk is involved whether by taking a new job or starting a new business. At some point, however, reasonableness does come into play. As observed in note 3 below, if Latall's business continues to fail, his willful maintenance of an untenable financial situation may constitute a prosecutable offense.

dant's contention is "supported by evidence." Section 556.051. It is not up to courts to add words such as "sufficiency" to this simple statutory phrase.

Although Latall's case was tried to the court without a jury, the MAI–CR instructions are helpful in understanding the burdens of production and proof. The Notes on Use to MAI CR. 322.08 simply provide that "when there is evidence of good cause," the issue of good cause is made an element of the state's case to disprove.

In the present case, Latall testified that he had no assets from which to pay support and had no other source of income. Additionally, all of the evidence in the record indicates that when Latall had the means to pay child support, he did so, as evidenced by the fact that, while employed, he complied with the support requirement.

■ As matter of law, Latall met the burden of production to "inject" the issue of good cause as required by section 556.051. Having done so, it was the state's burden to prove that Latall lacked good cause for his failure to pay child support.

■ However, although it is clear that Latall met the burden of production, that fact alone does not provide sufficient basis for this Court to overturn the ruling of the trial court. "When judging the sufficiency of the evidence to support a conviction, we may not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences." *State v. Helmig*, 924 S.W.2d 562, 565 (Mo.App. 1996) (citing *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992)). This standard applies "regardless of whether the case is judge-tried or jury-tried." *Id.* In deter-

mining whether the evidence was sufficient to support a conviction, this Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty. *Id.* "This Court accepts as true all evidence favorable to the verdict and disregards all evidence and inferences to the contrary." *State v. Reed*, 181 S.W.3d 567, 569 (Mo. banc 2006). The evidence presented by the state in the present case is insufficient to support Latall's conviction.

In *State v. Nelson*, the court of appeals reversed the defendant's conviction for criminal nonsupport on sufficiency grounds, holding that the testimony of the child's mother indicating that the defendant did not have employment was "not sufficient to justify a finding, beyond a reasonable doubt, that defendant had the ability to support these children." 463 S.W.2d 614, 617 (Mo.App.1971).

As in *Nelson*, the evidence in this case concerning Latall's income is undisputed— Latall does not have an income and essentially has no assets. The state offered no evidence to the contrary. In fact, the only evidence offered by the state was the testimony of the child's mother, who testified that Latall's bar had a "very well-constructed website" that seemed to indicate a prosperous establishment. The child's mother conceded, however, that she had no substantiation for her belief that Latall had means to pay child support. The unsubstantiated speculations of the child's mother do not provide sufficient evidence from which a trier of fact reasonably could have found Latall guilty.

Although Latall sufficiently injected the issue of good cause, the state failed to produce evidence to carry its burden of persuasion.[3] Because the state failed to

**3.** Although Latall's conviction has been reversed in this decision, his recent failures to

pay child support may constitute one or more prosecutable offenses if the state has the evi-

meet its burden and did not present sufficient evidence to support a finding of guilt, the judgment of the circuit court is reversed.

LAURA DENVIR STITH, C.J., PRICE, TEITELMAN and RUSSELL, JJ., concur.

MALONEY, Sr.J., dissents in separate opinion filed; BRECKENRIDGE, J., concurs in dissent of MALONEY, Sr.J., in separate opinion filed.

FISCHER, J., not participating.

MICHAEL J. MALONEY, Senior Judge, dissenting.

In this criminal nonsupport case, there is no controversy as to whether the defendant knowingly failed to comply with a legal obligation to provide adequate support for his son. The only question is whether, in failing to provide such support, he did so without good cause.

This dissent does not take issue with the determination by the majority that evidence presented by the defendant injected the issue of "good cause" into the case.

With the injection of "good cause," the state had the burden of proving beyond a reasonable doubt, as an element of its case, "that in failing to provide ... support the defendant did so without good cause." MAI–CR3d 322.08 and the statute cited by the majority are in complete accord.

In a jury trial, the jury would have been instructed that the state had to prove beyond a reasonable doubt that "... in failing to provide ... support the defendant did so without good cause." The MAI–CR3d definition of "good cause" is in complete accord with the statute cited in the majority opinion. The jury would have

been instructed that "good cause" means any substantial reason why the defendant is unable to provide adequate support. *"Good cause does not exist if the defendant purposely maintains his inability to support."* (Emphasis supplied.) MAI–CR3d 322.08.

As is clear from the majority opinion, it is not a function of an appellate court to weigh evidence. Evidence tending to prove guilt must be accepted as true. All contrary evidence and inferences are to be ignored.

The trial court is presumed to know the law and to have followed the law.

This dissent is limited to the holding of the majority that there was not sufficient evidence to support the defendant's conviction. Because the sufficiency of the evidence to establish all the other elements of the crime is not questioned, only proof on the "good cause" element need be reviewed.

There was evidence that the defendant persisted for months in limiting his efforts to obtain income to unproductive activity; he devoted all of his productive time to running a bar that was not making money when he bought it and did not make money under his management. This allows the reasonable inference that he purposely maintained his inability to provide adequate support. He was charged with failing to provide adequate support for six consecutive months. The evidence was that he made no voluntary child support payments for a period of fifteen months.

The evidence just described is sufficient to support a finding that good cause did not exist because the defendant purposely maintained an inability to support. To

dence required by section 568.040 and chooses to pursue additional charges of criminal nonsupport.

hold that it is not sufficient requires weighing evidence. It also raises doubt that evidence tending to prove guilt was accepted as true and that all contrary evidence and inferences were ignored.

A question that comes to mind is whether the same holding would have been made had the case been tried to a jury. The reversal of the judgment of conviction in this case will result in trial courts directing verdicts against the state in similar cases. The state has no right to appeal such rulings. The ill effects of the majority opinion will not be limited to this case.

PATRICIA BRECKENRIDGE, Judge, concurring in dissent.

In considering whether the state presented sufficient evidence to prove, beyond a reasonable doubt, that Mr. Latall "purposefully maintains his inability to support" his children, the majority interprets that phrase as requiring proof that Mr. Latall was "willfully maintain[ing] unemployment or lack of income with the purpose of avoiding child support." Op. at page 564, n. 2. (quoting *State v. Nelson,* 463 S.W.2d 614, 617 (Mo.App.1971)). The majority then infers from the evidence that Mr. Latall is, in good faith, working to make his bar a fiscally viable enterprise and that those efforts for fifteen months, to the exclusion of any other gainful employment, are reasonable under the circumstances and constitute "good cause," so the state failed to meet its burden of proving that Mr. Latall was purposefully maintaining his inability to support as required by section 568.040.1(2). The majority opinion then cautions that, if his business continues to fail, "his willful maintenance of an untenable financial situation may constitute a prosecutable offense," i.e., be sufficient evidence that he is willfully maintaining a lack of income for the purpose of avoiding child support.

The dissent makes a contrary inference from the evidence. The dissent infers that Mr. Latall had the purpose of avoiding child support from the evidence that Mr. Latall purchased a failing business and has continued the unprofitable operation of that business for fifteen months, to the exclusion of all other gainful employment, while knowing that the continued operation will not permit him to pay child support. That inference is also a reasonable inference from the evidence and such inference is properly considered to support the trial court's finding that there is proof beyond a reasonable doubt that Mr. Latall purposefully has maintained his inability to support his children.

An appellate court is compelled to consider the evidence, and all reasonable inferences, in the light most favorable to the conviction when considering whether there is sufficient evidence from which a trier of fact reasonably can find each element of the crime beyond a reasonable doubt. *State v. Gilbert,* 103 S.W.3d 743, 749 (Mo. banc 2003). Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered. *State v. Chaney,* 967 S.W.2d 47, 54 (Mo. banc 1998). Under this standard, the reasonable inference made by the dissent is the inference that is in the light most favorable to the trial court's conviction, and that is the inference the standard of review compels.

Additionally, because a trier of fact may choose to disbelieve all, part or none of the testimony of any witness, an appellate court must disregard evidence, even though uncontested, if the evidence is not favorable to the conviction. *See State v. Davis,* 903 S.W.2d 930, 934 (Mo.App.1995). The majority opinion reaches its conclusion that Mr. Latall was not purposefully maintaining an inability to pay child support by relying on Mr. Latall's testimony.

That testimony is not in the light most favorable to the trial court's conviction, and the standard of review compels that it be disregarded. Because I believe that the dissent's finding that there is sufficient evidence to support the conviction is a correct view of the evidence under the proper standard of review, I concur in the dissent.