STATE of Missouri, Respondent,

v.

Joseph N. HOLMES, Appellant.

No. SC 92648.

Supreme Court of Missouri, En Banc.

June 11, 2013.

James A. Burt, Ozark, for Holmes.

Jonathan D. Osborne, Springfield Regional Prosecutors' Child Support Office, Springfield, for the State.

LAURA DENVIR STITH, Judge.

Joseph N. Holmes appeals his conviction for misdemeanor criminal nonsupport. He argues the trial court erred in overruling his motion for judgment of acquittal claiming section 568.040, RSMo. Supp.2011, is unconstitutional because it makes lack of good cause an element of the crime of criminal nonsupport but then shifts the burden of proving good cause to the defendant, thereby violating his due process rights under the Fourteenth Amendment to the United States Constitution by forcing him to disprove an element of the offense.

Mr. Holmes misconstrues section 568.040. As in effect in 2011 when his crime occurred, section 568.040.1 set out the elements of the crime of criminal nonsupport by stating, "A parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide. . . ." It thereby makes lack of good cause an element of the offense.[1]

Elements of an offense must be proved beyond a reasonable doubt. While, as Mr. Holmes notes, section 568.040.3 creates an overlapping option for the defendant to put on an affirmative defense of good cause for failure to provide adequate support under a preponderance of the evidence standard, this second provision does not negate the express requirement in paragraph 1 making lack of good cause an element of the

---

1. Unless otherwise noted, references to section 568.040 are to the 2011 version.

offense that the State must prove beyond a reasonable doubt. The State conceded at trial that it had the burden of proving lack of good cause beyond a reasonable doubt under paragraph 1 of the statute, regardless of what the statute also may say about affirmative defenses. While the rationale for these overlapping sections is elusive, the wisdom of a statute permitting a defendant to offer evidence in support of an affirmative defense that duplicates an element of the crime is not before the Court and does not raise a constitutional issue. This Court also rejects Mr. Holmes' argument that the State failed to present sufficient evidence from which the judge reasonably could have concluded that Mr. Holmes' failure to pay the ordered child support was "without good cause." Affirmed.

## I. STATEMENT OF FACTS

The evidence, considered in the light favorable to the judgment, shows that Mr. Holmes and his wife, Montez Holmes, had a son, J.K.H. Mr. Holmes was self-employed as a tile setter. He also owned rental property, some of which he acquired prior to and some during the marriage.

The parties later separated. Because Ms. Holmes resided in Rolla, where J.K.H. was enrolled in school, and because Mr. Holmes resided in Christian County, Ms. Holmes became the custodial parent. When Ms. Holmes relocated to Christian County, she and Mr. Holmes arranged for the child to live with Ms. Holmes at least four days a week and with Mr. Holmes for two to three days a week. In February 2010, Ms. Holmes applied for Medicaid for J.K.H., and, in that process, learned that she could file a claim for child support with the Missouri Department of Social Services, Family Support Division. *See* § 454.470.4, RSMo. Supp.2011. Once she did so, the director of the family support division issued a notice and finding of financial responsibility to Mr. Holmes. Because Mr. Holmes did not file a timely response setting forth objections and requesting a hearing, the director entered an administrative order requiring Mr. Holmes to pay $428 in monthly child support, which became effective in November 2010.

Mr. Holmes did not comply with this child support order. The charges that are the basis of this case do not flow from that failure to comply, however, but from Mr. Holmes' alleged failure to comply with section 568.040, which in 2011 stated that a parent "commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide...." § 568.040.1. Ms. Holmes claimed that Mr. Holmes failed to provide *any* monetary support for their child during the months of March, April and May 2011. Accordingly, the State charged Mr. Holmes with the Class A misdemeanor of criminal nonsupport for failure to provide necessary support for his son for the months of March through May 2011.

At trial, the State presented evidence that Mr. Holmes was self-employed. Additionally, the child's mother testified that Mr. Holmes owned rental property and collected rent on that property during the months in which he did not pay any child support. She also testified that he was both physically and mentally able to work, yet he did not provide any clothing, medical care or health insurance during the three months at issue. She further testified he told her that "he did not want the State involved" and that he would fight any effort to enforce the child support order "as much as he possibly can." Finally, she said that he told her:

> he would pay me what he could pay me when he could pay me. And I said that unfortunately [the child's needs] ...

don't come up when convenient, so child care still is required, so I need something to help. And he said, "Well, I'll pay you half of what his needs are." She did not agree to this suggested division of the costs, and he paid her nothing.

At trial, Mr. Holmes did not raise the affirmative defense of good cause and did not testify. Rather, at the conclusion of the bench trial, he filed a motion for judgment of acquittal, asserting that section 568.040 violates the due process clause of the Fourteenth Amendment by unconstitutionally shifting the burden of proof to the defendant to show good cause for not making the required payments when lack of good cause is an element of the offense.

The State conceded that it bore the burden of proof to show that Mr. Holmes acted without good cause in failing to provide child support during the three months in question and that it believed it had met this burden of proof through the testimony summarized above. The trial court agreed and entered judgment against Mr. Holmes. The court sentenced Mr. Holmes to 180 days incarceration, suspended execution of sentence and placed Mr. Holmes on two years of unsupervised probation.

Mr. Holmes now appeals his conviction for misdemeanor criminal nonsupport, arguing that the trial court erred in overruling his motion for judgment of acquittal based on the constitutional argument described. Because this appeal directly challenges the validity of section 568.040, this Court has exclusive jurisdiction pursuant to Article V, section 3 of the Missouri Constitution.

## II. STANDARD OF REVIEW

To determine whether the evidence presented to the court was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather "accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Latall*, 271 S.W.3d 561, 566 (Mo. banc 2008); *see also State v. Guelker*, 548 S.W.2d 521, 525 (Mo. banc 1976). This "Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." *Latall*, 271 S.W.3d at 566.

## III. SECTION 568.040 DOES NOT SHIFT THE BURDEN OF PROOF OF LACK OF GOOD CAUSE

Mr. Holmes was convicted under section 568.040, which at the time of his crime in 2011 stated in relevant part:

1. ... A parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his or her child or stepchild who is not otherwise emancipated by operation of law.

2. ....

3. Inability to provide support for good cause shall be an affirmative defense under this section. A person who raises such affirmative defense has the burden of proving the defense by a preponderance of the evidence.

The parties agree that if proof of a particular fact is made an element of an offense, then due process requires the State to prove that element beyond a reasonable doubt.[2] *See Apprendi v. New Jer-*

2. In oral arguments, Mr. Holmes raised an additional argument that imprisoning him for failure to pay child support violated article 1, section 11 of the Missouri Constitution, which prohibits imprisoning an individual for debt. He did not discuss prior Missouri authority

*sey,* 530 U.S. 466, 476–78, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *State v. Taylor,* 238 S.W.3d 145, 148 (Mo. banc 2007). Here, paragraph 1 states that the crime of nonsupport occurs if a parent "knowingly fails to provide, without good cause, adequate support...." But paragraph 3 then states, "Inability to provide support for good cause shall be an affirmative defense under this section." Mr. Holmes argues that, while the statute might be constitutional if it ended with paragraph 1, the language of paragraph 3, which states that the defendant "has the burden of proving the defense [of good cause] by a preponderance of the evidence," removes the burden from the State, otherwise placed on it in paragraph 1, to prove lack of good cause and instead places the burden on the defendant to make an affirmative showing that he did have good cause to fail to provide adequate support.

■ Certainly, it is unclear why paragraph 1 makes lack of good cause an element and paragraph 3 also makes good cause an affirmative defense. But, if more than one statutory interpretation is possible, "this Court will interpret [the] statute in a manner that renders it constitutional." *Watts v. Lester E. Cox Medical Centers,* 376 S.W.3d 633, 647 (Mo. banc 2012). This Court disagrees that the only way to make sense of this confusion is to presume that, in adopting paragraph 3, the legislature intended to leave lack of good cause as an element but move the burden of proving it to the defendant and lower the standard of proof of that element to a preponderance of the evidence. The statute on its face demonstrates the contrary, because paragraph 3 refers to good cause as a defense,

not an element, and accordingly says it must be proved by a preponderance of the evidence, not beyond a reasonable doubt.

One alternative interpretation would be that the legislature wanted to emphasize the right of a defendant to show that he or she had good cause by explicitly stating that defendant could prove this as an affirmative defense by a preponderance of the evidence. While this seems at best surplusage in light of the requirement in paragraph 1 that the State prove lack of good cause beyond a reasonable doubt, the language of the two paragraphs is different: In paragraph 1, the State must prove a negative—lack of good cause—while in paragraph 3, the defense has the option of offering the affirmative—the existence of good cause—as a defense. While this distinction may be a minor one, and although this Court may not be certain why the legislature drafted the statute in this manner, it had the authority to do so.

Another alternative interpretation is to presume that, while the legislature mentioned lack of good cause in paragraph 1, it intended the language in paragraph 3 to clarify that lack of good cause is not an element of the crime but rather is solely an affirmative defense because, on its face, paragraph 3 states it sets out a defense. This would not be particularly artful, however, as this purpose could be served by adoption of paragraph 3 alone without mentioning "without good cause" in paragraph 1. Retention of the "without good cause" language in paragraph 1 just confuses the issue if this was the legislature's intent.

---

on this issue such as *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567 (Mo. banc 1976), which held that imprisonment for failure "to comply with orders for payment of maintenance and child support" does not violate "the constitutional prohibition against imprisonment for

debt." In any event, Mr. Holmes failed to raise this argument below or in his briefs on appeal, and, therefore, the argument is not preserved. *See Artman v. State Bd. of Registration for Healing Arts,* 918 S.W.2d 247, 252 (Mo. banc 1996).

In other words, had the legislature wished to remove "without good cause" as an element but allow it as an affirmative defense, it could have removed the phrase "without good cause" from paragraph 1 at the same time it added the affirmative defense to paragraph 3. Indeed, that is just what it did in 2012 when it amended section 568.040 to remove lack of good cause from paragraph 1 but left the portion of paragraph 3 making proof of good cause an affirmative defense. *See* section 568.040, RSMo. Supp.2012.[3]

Perhaps the legislature's 2012 amendment means that its retention of lack of good cause in paragraph 1 in the 2011 version of the statute was mere oversight. Whatever its reasons for providing these overlapping methods of addressing the issue of good cause, the fact remains that the legislature did leave the requirement of proof of lack of good cause as an element in 2011 and removed it as an element in 2012. Mr. Holmes' crime occurred in 2011; therefore, it is governed by the 2011 version of the statute.

Rather than interpret this duplication to make lack of good cause an element and then nonsensically impose the burden of disproving it on the defendant while characterizing it as a defense rather than an element, the most logical interpretation in the circumstances is to interpret it as requiring the State to prove lack of good cause while at the same time permitting the defendant to offer additional proof that he has good cause. Indeed, the State agreed below for the purposes of this case that this was the proper interpretation of the statute, and it shouldered the burden to prove that Mr. Holmes acted "without good cause." This Court concurs in this reading.

Mr. Holmes argues that *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), requires a different result. *Hicks* held that the State could not convict a defendant of contempt of a court order to pay child support without proof that he acted intentionally. It was improper, therefore, to place the burden of proving lack of intent on the defendant in that case. Here, by contrast, the issue is criminal nonsupport, not failure to comply with a court order for child support or the administrative order for child support involved in this case. In addition, for the reasons just noted, this Court interprets the statute to place the burden of proof on the State to prove lack of good cause. *Hicks*, therefore, is not on point.

## IV. THE STATE OFFERED SUFFICIENT EVIDENCE OF FAILURE TO PAY WITHOUT GOOD CAUSE.

■ Mr. Holmes also argues that even if the statute placed the burden on the State to prove lack of good cause as an element of the crime, the State failed to do so. He asserts the only evidence of his ability to support his son is his wife's testimony that he owns rental properties that produce rent each month. He further argues that, without bank records, tax records, employment records and pay stubs, the State failed to introduce any evidence of his financial condition. Mr. Holmes argues that because the State did not present evidence to establish his financial condition, the State must have relied on burden-shifting to convict him. While

---

3. This Court is not called on to and does not address the validity of the 2012 revision to the statute, which removes the requirement of proof of lack of good cause as an element of the offense. The pertinent part of the 2012 version of the statute states:

1. ... a parent commits the crime of nonsupport if such parent knowingly fails to provide adequate support which such parent is legally obligated to provide for his or her child or stepchild who is not otherwise emancipated by operation of law.

not directly stated, Mr. Holmes seems to be arguing that without testimony regarding how much rent he received, it was impossible for the court below to find that these rents were sufficient to allow him to pay his administratively ordered child support of $428 per month.

It is not incumbent on the State to show that Mr. Holmes could pay the ordered amount of child support. The State's burden is to show that Mr. Holmes, without good cause, violated his statutory obligation "to provide ... adequate support which [he] is legally obligated to provide for his ... child." § 568.040.1. To meet its burden, the State had to prove only that Mr. Holmes did not have good cause for failing to provide adequate monetary support for his son, not that he was able to pay the full amount required by the administrative order.

■ Mr. Holmes also understates the evidence showing lack of good cause. This is not a case in which Mr. Holmes made some payments and the question is whether he could or should have made greater payments, or, as the State argued below, "It's not a question of whether he even provided adequate support, because the evidence showed that he provided none." Here, it is uncontested that he provided absolutely no monetary support for his son and no in-kind support other than to feed and house the child during those days on which he had custody. While a child support order is not conclusive regarding what constitutes adequate support, a complete failure to pay child support is evidence of failure to pay adequate support. *See State v. Reed,* 181 S.W.3d 567, 570 (Mo. banc 2006); *State v. Sellers,* 77 S.W.3d 2, 4–5 (Mo.App.2002).

In addition, the State presented evidence at trial that Mr. Holmes was self-employed as a tile setter, was physically and mentally able to work, and had rental property income of an unspecified amount during March, April and May 2011. Further, his wife testified that he offered to divide the child's expenses, from which it can be inferred that he had some funds available for support. Finally, there is no evidence that his refusal to pay any money at all was due to a lack of funds; to the contrary, his wife testified that he also said he would not pay because he did not like being ordered to do so and would fight the order as much as he could. Mr. Holmes' only other argument in support of his assertion that the record did not show he failed to adequately support his son was his evidence that he fed and housed his son on the two to three days a week his son stayed with him, and that doing so satisfied his obligations. This argument was rejected in *State v. Degraffenreid,* 877 S.W.2d 210 (Mo.App.1994):

> The gist of Defendant's argument is that because he fed and housed his daughters during the times when he was exercising his right of visitation pursuant to the decree of dissolution, his obligation of providing adequate support was somehow satisfied or negated. Such is not the support obligation of a parent in this state.

*Id.* at 215.

From this evidence, a fact-finder could infer that Mr. Holmes had the ability to pay some amount of support for his son through his rental property and his employment and failed to pay not because had had good cause no to do so but because he vowed to fight the child support order. This evidence was sufficient to support the trial court's finding that Mr. Holmes knowingly failed to provide adequate support for his son without good cause and, therefore, was guilty of criminal non-support.

## V. CONCLUSION

This Court finds that section 568.040.1, RSMo. Supp.2011, required the State to prove beyond a reasonable doubt that the defendant failed to provide adequate support without good cause, and section 568.040.3 does not unconstitutionally place the burden on defendant of disproving this element. By leaving this requirement in paragraph 1, the legislature clearly left it as an element to be proved by the State beyond a reasonable doubt, however unclear its purpose may have been in duplicatively permitting a defendant also to prove good cause as an affirmative defense. The State met its burden by presenting sufficient evidence that Mr. Holmes knowingly failed to provide his son with adequate support without good cause. The judgment is affirmed.

All concur.