

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
v.                                    )    No. SD33695
                                      )
WILLIAM HOWARD BUSHMAN,               )    **Filed:  Feb. 10, 2016**
                                      )
    Defendant-Appellant.          )


#### APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Kenneth M. Hayden, Circuit Judge

**<u>AFFIRMED</u>**

A jury found William Howard Bushman ("Defendant") guilty of the class D felony of criminal nonsupport of a child.  *See* section 568.040.[1]  The trial court imposed a four-year sentence, suspended its execution, and placed Defendant on a five-year term of probation. Defendant's sole point on appeal claims the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the evidence "was insufficient to establish beyond a reasonable doubt that he did not have good cause for failing to pay child support."  Finding no merit in that claim, we affirm.

---

[1] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2009.

**Standard of Review and Governing Law**

We review the denial of a motion for acquittal at the close of the evidence to determine if the State presented sufficient evidence to make a submissible case, *State v. Pullum*, 281 S.W.3d 912, 915 (Mo. App. E.D. 2009), and allow a reasonable trier of fact to find that each element of the offense was proven beyond a reasonable doubt. *State v. Reed*, 181 S.W.3d 567, 569 (Mo. banc 2006). We accept all evidence favorable to the verdict and disregard contrary evidence and inferences. *Id.* "Our function is not to reweigh the evidence, but only to determine whether the conviction is supported by sufficient evidence." *State v. Rousselo*, 386 S.W.3d 919, 921 (Mo. App. S.D. 2012).

Section 568.040.1 provides, in pertinent part, that "a parent commits the crime of nonsupport if such parent knowingly fails to provide, *without good cause*, adequate support which such parent is legally obligated to provide for his or her child or stepchild who is not otherwise emancipated by operation of law."[2] (Emphasis added.) **"Good cause"** is defined as, "any substantial reason why the defendant is unable to provide adequate support. Good cause does not exist if the defendant purposely maintains his inability to support[.]" Section 568.040.2(2). **"Support"** is defined as "food, clothing, lodging, and medical or surgical attention[.]" Section 568.040.2(3).

In the version relevant to this case, section 568.040.3 provides that an "[i]nability to provide support for good cause shall be an affirmative defense under this section[,]" and section 568.040.4 gives the defendant the burden of injecting the issue of good cause. Our high court has interpreted sections 568.040.1 and .3 together "as requiring the State to prove

---

[2] Section 568.040 was subsequently amended -- effective August 28, 2011 -- and "without good cause" was removed from subsection 1, but an "[i]nability to provide support for good cause" was retained in subsection 3 as "an affirmative defense[.]" Section 568.040 RSMo Cum. Supp. 2012; *see also State v. Meacham*, 470 S.W.3d 744, 746-47 (Mo. banc 2015). The version of section 568.040 effective January 1, 2017 may be found at RSMo Cum. Supp. 2014.

lack of good cause while at the same time permitting the defendant to offer additional proof that he has good cause." *State v. Holmes*, 399 S.W.3d 809, 814 (Mo. banc 2013).[3] As a result, "without good cause" remains an element that the State must disprove beyond a reasonable doubt under the version of section 568.040.1 applicable to this case. *Id.* If the defendant injects some evidence of good cause, the burden of persuasion nonetheless remains on the State to prove beyond a reasonable doubt that the defendant did *not* have good cause. *State v. Latall*, 271 S.W.3d 561, 564 (Mo. banc 2008).[4]

"Criminal nonsupport is a class A misdemeanor, unless the total arrearage is in excess of an aggregate of twelve monthly payments due under any order of support issued by any court of competent jurisdiction or any authorized administrative agency, in which case it is a class D felony." Section 568.040.5.

## Facts

Defendant was charged by information with committing the class D felony of criminal nonsupport, "in that on or about December 31, 2010," Defendant "knowingly failed to provide, without good cause, adequate support for [C.B., Defendant's minor child ("Child").]" The information further alleged that Defendant had a total court-ordered child support arrearage "in excess of 12 months . . . as of December 31, 2010."

At trial, the State adduced evidence that Child was born to Defendant and Defendant's then-wife ("Mother") in 1996. The couple divorced in 1997, and Mother was granted legal and physical custody of Child. As relevant here, Defendant was ordered to pay

---

[3] The *Holmes* case involved conduct that occurred in "March through May 2011[,]" 399 S.W.3d at 811, and the Court therefore utilized the same version of the statute at issue in the instant case. *Cf. id*. at 811 n.1 and *Meacham*, 470 S.W.3d 747 n.3.

[4] *Latall* construed an even earlier version of the statute that did not expressly include good cause as an affirmative defense, but it nonetheless included "without good cause" as a part of the offense and placed the burden of injecting the issue of good cause on the defendant. *Id.* at 562. *See also* sections 568.040.1 and .3, RSMo 2000.

Mother $320.27 a month ($3,843.24 per year) in monetary child support until Child's emancipation. Between January 2008 and December 2010, Defendant had amassed a total child-support arrearage of $6,269.65 -- roughly 19.5 months' worth of court-ordered payments. Mother received no "payments or any support of any kind" from Defendant "in any month in 2010[.]"

Defendant testified in his own defense and, as relevant to the issue of good cause, he provided the following testimony. Defendant underwent knee surgery on December 27, 2007 and was unable to return to work in a full-time capacity until July 18, 2008. Defendant was arrested in July 2009 on a criminal charge that was later dismissed. At the time of the arrest, Defendant had been working for "[n]ine, going on ten years" as a maintenance man for Huffman Trailer Sales and Services ("Huffman"). Defendant was earning "[e]ight twenty-five, eight-fifty an hour, somewhere around there" in that position. Upon his 2009 arrest, Defendant spent the next month-and-a-half to two months in jail, which resulted in the loss of his house and his job at Huffman. Defendant admitted that after his arrest in 2009, he did not make any payments in support of Child and he agreed that he paid no support for Child in 2010. Defendant said he was unable to find steady employment until the "end of 2010," when he was hired to work full-time at a local McDonald's.

During all such testimony (which was extensive), Defendant made several admissions that are relevant to the issue he now raises on appeal. He testified that he was the sole supporter of one of his children, N.B., who was born in January 2007. When Defendant went to jail in July 2009, N.B. stayed with Defendant's friend, Judy Hayes ("Hayes"). Upon Defendant's release from jail, he and N.B. stayed with Hayes for "[s]ix, seven months" until Defendant "could get back on [his] feet." Thereafter, Defendant and

4

N.B. shared an apartment with another individual, and Defendant paid one-half of the rent. Defendant received social security death benefits from N.B.'s mother,[5] and he also earned income from "little side jobs here and there." When asked what year he worked these side jobs, Defendant responded, "Well, towards the end of 2009, 2010. I did what I could to keep a roof over me and my son's head. I paid what I could when I could to the child support."

Defendant testified that he holds an associate degree in general studies and was working toward receiving his bachelor's degree. As a maintenance man with Huffman, Defendant explained that he "did heating and air conditioning and plumbing, electrical work, just whatever needed fix[ing] on the trailer." He also testified that he was able to work in 2010.

**Analysis**

Both parties recognize that Defendant's evidence about his 2009 job loss injected the issue of good cause,[6] and the State acknowledges that it had the burden to prove that Defendant was "'without good cause.'" So the real question before us is whether sufficient evidence was adduced to allow a reasonable fact-finder to conclude that Defendant was "without good cause" in failing to provide Child with adequate support. *See Holmes*, 399 S.W.3d at 814. Keeping in mind that "[a] jury may believe or disbelieve all, part, or none of the testimony of any witness[,]" *State v. Coe*, 233 S.W.3d 241, 251 (Mo. App. S.D. 2007),

---

[5] Defendant testified that N.B.'s mother passed away in "August or September, 2009."
[6] Defendant does not challenge the form of the jury instructions. Those instructions were in accord with the information and included "without good cause" as an element necessary for conviction.

and having thoroughly reviewed the record in the light most favorable to the judgment (as we must), we find that the State met its burden.[7]

Such evidence consisted of the following admissions by Defendant. Defendant was earning money through various "side jobs" in 2009 and 2010, but he paid nothing in support of Child following his arrest in 2009. The jury was under no obligation to credit Defendant's explanation that the money earned through such side jobs only went so far as to "keep a roof over [his] head." Defendant possessed an associate's degree, had nearly a decade of experience doing maintenance work, and was "able to work" in 2010. After his release from jail in 2009, Defendant indicated as follows that he had money he could have used to support his children.

> [Prosecutor:] And how long were you in custody?
>
> [Defendant:] Approximately a month and a half to two months.
>
> [Prosecutor:] And [Hayes] covered all the expenses of childcare for [N.B.] at that time?
>
> [Defendant:] Yes, she did, sir.
>
> [Prosecutor:] Did you reimburse her for that?
>
> [Defendant:] I tried. She wouldn't take it. I didn't have nothing to give her at the time anyway, but she would never have took it.
>
> [Prosecutor:] But you didn't have any expenses for your son during that period of time?
>
> [Defendant:] I didn't say that. She wouldn't accept any repayment, though.

---

[7] Ironically, the lion's share of such evidence was provided by Defendant himself. *Cf.* ***State v. Smith***, 944 S.W.2d 901, 916 (Mo. banc 1997) (because the defendant presented evidence after the State had rested, he waived his claim that the State did not prove its case by the close of its own evidence).

Although this testimony could support two different, but reasonable inferences, our standard of review requires us to accept the one most favorable to the verdict. *Reed*, 181 S.W.3d at 569. Accordingly, Defendant's testimony that his attempts to provide compensation for the support of N.B. were rejected would allow the jury to reasonably infer that Defendant was in possession of funds that could have been used to provide support for Child.[8] *Cf. Holmes*, 399 S.W.3d at 815 (it could be inferred that the defendant "had some funds available for support" based upon his wife's testimony that the defendant "offered to divide the child's expenses"). Further, "a complete failure to pay child support is evidence of failure to pay adequate support." *Id.*

From the aforementioned evidence, a reasonable juror could find, beyond a reasonable doubt, that Defendant failed to provide adequate support without good cause based upon his failure to pay any support for Child after his release from jail in 2009 and the reasonable inference that he had income that could have been paid in support of Child.[9] Defendant's point is denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. - CONCURS

---

[8] We note that the prosecutor urged this particular inference from the evidence during closing argument.
[9] In support of his argument to the contrary, Defendant relies on *Latall*. We find *Latall* inapposite because the undisputed evidence in that case was that the defendant had no income and essentially no assets. 271 S.W.3d at 566.