

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI,         )
         )
         **Respondent,**  )   **WD82508**
**v.**         )
         )
         )   **OPINION FILED:**
         )   **April 28, 2020**
**STEVEN H. GEHRING II,**   )
         )
         **Appellant.**  )

**Appeal from the Circuit Court of Randolph County, Missouri
The Honorable Scott A. Hayes, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Gary D. Witt, Judges

Mr. Stephen H. Gehring ("Gehring") appeals from the judgment entered by the Circuit Court of Randolph County, Missouri ("trial court"), following a jury trial in which he was found guilty of one count of the class D felony of possession of a controlled substance, § 579.015,[1] and one count of the class D misdemeanor of unlawful possession of drug paraphernalia, § 579.074. He challenges the sufficiency of the evidence to support his convictions. We affirm.

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as updated through the 2017 Supplement.

**Facts and Procedural History**[2]

Randolph County Sheriff's Deputy Tim Maag was on duty on May 2, 2018. Deputy Maag went to Gehring's residence to execute a warrant for his arrest on a criminal non-support (*i.e.*, child support) matter. The deputy met Gehring at an entryway to the residence and advised Gehring that the deputy had a warrant for Gehring's arrest for criminal non-support. Gehring was cooperative and proceeded to remove items from his pockets and place them on a dresser beside the door before being physically restrained by Deputy Maag.

The deputy observed Gehring remove from his pocket a clear plastic straw that was three or four inches in length, cut at an angle, with plainly visible white residue in the cut straw. Based on the deputy's training and experience, the way the straw was cut, and the visible residue, Deputy Maag believed it to be, in drug use parlance, a "tooter straw" used for the consumption of powdered narcotics. When Gehring placed the cut straw on the dresser, Deputy Maag had him step out of the doorway and patted him down. The deputy picked up the cut straw and asked Gehring about it. Gehring told him it was from a glue stick and that he had it in his pocket. The deputy observed the cut straw and determined it was not a glue stick or glue stick component piece and, hence, that Gehring was attempting to deceive him as to the true nature of the "tooter straw." Deputy Maag advised Gehring that he was under arrest, placed him in handcuffs, and escorted him to the rear of the deputy's patrol car.

Deputy Maag retrieved the cut straw, took it to the sheriff's office, and field tested it. The cut straw tested positive for the presence of methamphetamine. The deputy then deposited the cut straw in an evidence bag, placed it in an evidence locker, and filled out a lab request. The cut

---

[2] On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Ryland*, 533 S.W.3d 745, 746 n.2 (Mo. App. W.D. 2017) (citing *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009)).

straw was submitted to the Drug Chemistry Section of the Missouri State Highway Patrol Crime Laboratory for testing. The criminalist's laboratory report stated that the residue in the cut straw contained methamphetamine, a controlled substance.

The State charged Gehring, as a prior and persistent offender, with one count of the class D felony of possession of a controlled substance in that on May 2, 2018, he "knowingly possessed methamphetamine, a controlled substance, knowing of its presence and nature," and one count of the class D misdemeanor of unlawful possession of drug paraphernalia in that on May 2, 2018, he "knowingly possessed a cut drinking straw, which was drug paraphernalia, knowing of its presence and nature, with intent to use it to ingest, inhale, or otherwise introduce into the human body, a controlled substance or an imitation controlled substance."

A jury trial was held, at which Deputy Maag and the criminalist testified. The jury found Gehring guilty of both counts. The trial court sentenced Gehring to four years' imprisonment in the Missouri Department of Corrections on the felony possession charge and to thirty days' imprisonment in the Randolph County Jail on the misdemeanor possession charge, with the misdemeanor sentence to run concurrent with the felony sentence.

Gehring timely appealed.

**Standard of Review**

"When reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, we do not re-weigh the evidence." *State v. Martin*, 575 S.W.3d 764, 767 (Mo. App. W.D. 2019) (citing *State v. Holmes*, 399 S.W.3d 809, 812 (Mo. banc 2013)). "Instead, we 'accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences.'" *Id*. (quoting *Holmes*, 399 S.W.3d at 812). "The assessment is not whether this Court believes that

3

the evidence established guilt beyond a reasonable doubt but, rather, whether, in light of the evidence most favorable to the verdict, any rational fact-finder could have found guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

**Analysis**

Gehring asserts two points on appeal, contending in both that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support his conviction. In the first point, he asserts that there was insufficient evidence that he knowingly possessed the methamphetamine residue on the cut straw. Gehring argues that the evidence presented at trial did not establish that the residue was of an amount sufficient to warrant a reasonable inference that he was aware of its nature as methamphetamine simply by possessing the cut straw on which it resided. In the second point, Gehring contends that there was insufficient evidence that he knew the cut straw was used in conjunction with a controlled substance.

"To prove these possession offenses, the State must show (1) conscious and intentional possession of [the controlled substance and paraphernalia], either actual or constructive, and (2) awareness of the presence and nature of the controlled substance [and paraphernalia]." *State v. Phillips*, 477 S.W.3d 176, 179 (Mo. App. E.D. 2015) (citation omitted) (internal quotation marks omitted). "[B]oth possession and knowledge may be proved by circumstantial evidence." *State v. Drabek*, 551 S.W.3d 550, 556 (Mo. App. E.D. 2018). Missouri courts "employ the same analysis when reviewing the question of whether [a defendant] possessed drug paraphernalia as when determining whether [a defendant] possessed a controlled substance." *Phillips*, 477 S.W.3d at 179 (internal quotation marks omitted). Therefore, we will address the two points together.

Methamphetamine is a Schedule II controlled substance. *See* § 195.017.4(3)(c). Under section 579.015.1, "[a] person commits the offense of possession of a controlled substance if he

or she knowingly possesses a controlled substance." A person possesses a controlled substance if "with the knowledge of the presence and nature of a substance, [he] has actual or constructive possession of the substance. A person has actual possession if he has the substance on his or her person or within easy reach and convenient control." § 195.010(34). Under section 579.074.1, "[a] person commits the offense of unlawful possession of drug paraphernalia if he or she knowingly uses, or possesses with intent to use, drug paraphernalia to . . . ingest, inhale, or otherwise introduce" a controlled substance into the human body.

Gehring does not contest that he had actual possession of the cut straw he removed from his pocket nor does he contest that the residue found in the cut straw was methamphetamine, a controlled substance. Rather, he challenges whether the State presented sufficient evidence from which the jury could have found that he "knowingly" possessed the methamphetamine residue and "knew" the cut straw was used in conjunction with a controlled substance.

Gehring argues that the evidence presented at trial did not establish that the residue was of an amount sufficient to warrant a reasonable inference that he was aware of its nature as methamphetamine simply by possessing the cut straw on which it resided. "'Missouri's drug statutes do not establish a minimum amount necessary to sustain a conviction for illegal possession.'" *State v. Gillum*, 574 S.W.3d 766, 769 (Mo. App. S.D. 2019) (quoting *State v. Moore*, 352 S.W.3d 392, 400 (Mo. App. E.D. 2011)). *See also* § 195.017.4(3)(c) (defining a Schedule II controlled substance to include "[a]ny material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: . . . (c) Methamphetamine, its salts, isomers, and salts of its isomers[.]"). "'Rather, the defendant's guilt depends on his acts and knowledge—whether his knowing possession may be fairly inferred given the *de minimus* amount combined with all the surrounding circumstances.'"

5

*Gillum*, 574 S.W.3d at 769 (quoting *Moore*, 352 S.W.3d at 400). "Thus, although the drug may be an unweighable residue, 1) the drug must be present, 2) the defendant must know of its presence and nature, and 3) the defendant must possess it, either actually or constructively." *Moore*, 352 S.W.3d at 400.

Here, there was sufficient evidence that Gehring knowingly possessed both the methamphetamine and the drug paraphernalia. The drug was present; the clear plastic cut straw had plainly visible residue in it. Deputy Maag testified that he was able, with the naked eye, to physically observe white residue in the straw. When Deputy Maag field tested the residue in the cut straw, it tested positive for the presence of methamphetamines. Likewise, when the criminalist lab tested the residue in the cut straw, it tested positive for methamphetamine.

The drug was found on the cut straw that Gehring removed from his person, a fact that establishes actual possession under section 195.010(38).

Regarding Gehring's knowledge of the drug's presence and nature, "[a] defendant's knowledge of a controlled substance may be reasonably inferred from the defendant's actual possession of that substance." *Drabek*, 551 S.W.3d at 556. Further, the fact that the drug was plainly visible inside the cut straw to Deputy Maag supports a reasonable inference that Gehring knew of its presence and nature; "[i]f the residue was visible to [the deputy], it would have been visible to [Gehring]." *Moore*, 352 S.W.3d at 400.

Gehring further argues that because a plastic straw has legitimate uses, the State was required to prove that Gehring had used or intended to use it as drug paraphernalia. Drug paraphernalia is defined in relevant part as "all equipment, products, substances and materials of any kind which are used, intended for use, or designed for use, in . . . ingesting, inhaling, or otherwise introducing into the human body a controlled substance or an imitation controlled

6

substance in violation of this chapter or chapter 579." § 195.010(17). In determining whether an object is drug paraphernalia, we may consider, in addition to all other logically relevant factors, "[t]he existence of any residue of controlled substances or imitation controlled substances on the object[.]" § 195.010(17)(m)e. In this case, there was sufficient evidence that the cut straw was drug paraphernalia. There was residue on the straw that contained methamphetamine, as confirmed by Deputy Maag's field test and the lab tests performed by the criminalist. Additionally, Deputy Maag testified that, based on his training and experience, the way the straw was cut, combined with the visible residue in it, confirmed to him that, in drug use parlance, it was a "tooter straw" used for the consumption of powdered narcotics.

In addition to Gehring's actual possession of methamphetamine and drug paraphernalia, there was additional circumstantial evidence supporting a finding that he was aware of the presence and nature of the methamphetamine and drug paraphernalia.

Gehring argues that because he was cooperative and emptied his pockets in front of Deputy Maag without hesitation indicates that he did not know about the illicit nature of the substance on the "tooter straw" and that he believed the cut straw was legal to possess. Gehring's argument turns our standard of review on its head and would require us to view the evidence in the light most favorable to *the convicted defendant's view of the evidence*. This we will not do. To the contrary, in determining whether the evidence was sufficient to support a conviction and a trial court's denial of a motion for judgment of acquittal, we are required to "'accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences.'" *Martin*, 575 S.W.3d at 767 (quoting *Holmes*, 399 S.W.3d at 812). Under this lens of review, the jury could have reasonably believed that Gehring emptied his pockets because he knew that he had a "tooter straw" with methamphetamine residue

7

on it and he wanted to remove it from his pocket before he was arrested and his possessions inventoried at law enforcement headquarters.

Undeterred, Gehring also argues that his "mistaken belief" that the "tooter straw" was actually a component piece from a glue stick in his pocket did not suggest a consciousness of guilt. Once, again, Gehring ignores our lens of factual review and the requirement that we are to ignore inferences *contrary* to the verdict. Conversely, viewed in the light most *favorable* to the verdict, *Martin*, 575 S.W.3d at 767, identifying a clear plastic cut straw with residue in it as a glue stick component was an attempt by Gehring to deceive Deputy Maag as to its true nature as a "tooter straw" with methamphetamine residue in it. "[M]aking [a] false statement[ ] in an attempt to deceive the police" is an "incriminating circumstance[ ] that will support an inference of knowledge and control." *Drabek*, 551 S.W.3d at 559.

The State presented sufficient evidence from which a jury could find Gehring guilty of both charges beyond a reasonable doubt.

Points I and II are denied.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Alok Ahuja and Gary D. Witt, Judges, concur.

8