

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,         )
                                    )
     Plaintiff-Respondent,    )
                                    )
v.                             )         No. SD38528
                                    )
DEBORAH K. LUNDSTROM,    )        Filed: **September 23, 2025**
                                    )
     Defendant-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
Honorable T. Todd Myers, Judge

### <u>AFFIRMED</u>

Following a jury trial, Deborah K. Lundstrom ("Defendant") was convicted of first-degree endangering the welfare of a child resulting in death under §568.045.2(3) (Count I); first-degree involuntary manslaughter under §565.024 (Count II); first-degree endangering the welfare of a child under §568.045.1 (Counts III-X); and operating a child care facility without a license under §210.211 (Count XI).[1]

Defendant argues three points on appeal: (1) that the evidence was insufficient to support her conviction for endangering the welfare of a child resulting in death because there was no evidence that the victim had died during the "twelve minutes" Defendant had left him at her

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016 as amended through March 2nd, 2022, the date of the alleged crimes.

home without supervision; (2) that the evidence was insufficient to support her conviction for involuntary manslaughter because there was no evidence Defendant consciously disregarded the risk of asphyxiation and death; and (3) that the trial court plainly erred by failing to modify the Missouri Approved Instructions ("MAI") verdict director for endangering the welfare of a child resulting in death. Finding no error, we affirm.

**Facts**

Defendant operated an unlicensed daycare at her home for 18 years. On March 2, 2022, Defendant left 9 children, each under age 3, alone in her bedroom while she left to pick up her son from school. Seven of the children were strapped in car seats, including C.S. ("Victim"), who was 9 months old. Prior to that day, Defendant had made false representations to the children's parents that her daycare was licensed and that she cared for no more than 4, 5, or 6 children at a time.[2]

Defendant left the house at 2:28 p.m. and returned twelve minutes later at 2:40 p.m. At 2:58 p.m., Defendant called 911 and reported that Victim was unresponsive. Upon arrival, officers rendered life-saving measures to Victim, who was then transported to the hospital where he was declared deceased. Victim's cause of death was "[a]sphyxia due to strangulation by the straps and buckle of his car seat."

Detective J.M. ("Detective") testified that, when he arrived at Defendant's home on March 2, he asked to watch Defendant's surveillance footage. Defendant pulled out her phone,

---

[2] §210.211 makes it unlawful to operate a child care facility without having a written license granted by the department of elementary and secondary education. This requirement does not apply to a "person who is caring for six or fewer children, including a maximum of three children under the age of two, at the same physical address."

"scroll[ed] extremely fast and then shut it off, stuck it in her pocket, and referenced something about it had gone offline and she really didn't know why." Detective stated Defendant's conduct was "evasive." Detective further testified that Defendant initially stated that she had placed all of the children, including Victim, in her van and that Victim was quiet during the ride to the school. After observing that Defendant's van was in the garage with a layer of dust on the windshield, a stack of cardboard boxes on top of it and numerous other items located around and inside of it, Detective confronted Defendant about her story. Defendant then admitted that she drove her sedan instead, initially stating, falsely, that all of the children had been in the car with her, that Victim was in the back in his car seat, and that some of the kids were unrestrained on the floorboards. Then, after being confronted with her own surveillance footage, Defendant admitted that she did not transport the children in her car and, instead, left them alone in her bedroom. Defendant also falsely stated that she believed her daughter and her daughter's boyfriend were on the property when she left. Defendant eventually admitted that she had been leaving the children at home to pick up her son from school for about a month.

On March 7, following Victim's autopsy results, Defendant waived her *Miranda* rights and spoke with Detective. When asked whether Victim was properly buckled into his car seat, Defendant initially stated the "whole thing" was strapped correctly. Defendant later stated that sometimes she would strap both the chest and crotch buckles, whereas other times she would only strap the chest buckle and that, on this occasion, she could have "possibly" strapped only the chest clip.

Dr. Duff ("Medical Examiner") testified that Victim's cause of death, asphyxiation due to strangulation by the straps and buckle of his car seat, was evidenced by "marks on the front of

the neck, [which] very clearly match the buckle and the strap of the car seat." Medical Examiner attached an article to Victim's autopsy report, which analyzed 31 car seat deaths and stated, "most, if not all, of [the 31 car seat deaths] might have been prevented had the device been used properly and/or had there been adequate supervision."

The trial court denied Defendant's motion for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. The jury found Defendant guilty on all counts. Defendant timely filed a motion for new trial, arguing insufficiency of the evidence as to Count I (endangering welfare of a child resulting in death) and Count II (involuntary manslaughter), and that the verdict director for Count I ("Instruction No. 5") was in error. The trial court denied Defendant's motion. Defendant was sentenced to a total of 24 years in prison. This appeal followed.

**Standard of Review**

When reviewing the sufficiency of the evidence to support a conviction, we do not "weigh the evidence but rather accept[ ] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[ ] all contrary evidence and inferences." ***State v. Holmes***, 399 S.W.3d 809, 812 (Mo. banc 2013) (internal quotations omitted). The relevant inquiry is "whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." ***Id***. at 812.

> This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

***State v. Nash***, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotations omitted). We do not act as a "super juror" with "veto powers," but rather give "great deference to the

trier of fact," who "may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id*.

## Analysis

### I. Point I: Sufficiency of the Evidence to Support Conviction for Endangering the Welfare of a Child Resulting in Death

In her first point, Defendant argues the trial court erred in overruling her motion for judgment of acquittal regarding her conviction for endangering the welfare of a child resulting in death, because the evidence was insufficient, in that "there was no evidence that [Victim] died as a result of the twelve-minute period when [Defendant] left [Victim] unattended in a car seat." Defendant's argument is without merit.

A person commits first-degree endangering the welfare of a child if they "[k]nowingly act[] in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years of age[.]" §568.045. The offense is a class A felony if it "[r]esults in the death of a child[.]" *Id*.

This Court need not dwell on the fact that leaving Victim, who was 9 months old, improperly buckled in a car seat and unsupervised, clearly put Victim's life, body, and health at substantial risk. Defendant's many false statements to Detective, attempting to conceal her actions, is evidence of her consciousness of guilt and was sufficient evidence from which the jury could find that Defendant knowingly put Victim's life, body, or health at a substantial risk. *State v. Webb*, 569 S.W.3d 530, 541 (Mo. App. W.D. 2018) (quoting *State v. Loughridge*, 395 S.W.3d 605, 607 (Mo. App. S.D. 2013)) ("A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein").

Defendant instead argues that because the State could not prove beyond a reasonable doubt that Victim died during the twelve minutes that she was physically away from the home, Victim's death did not result from her leaving Victim unsupervised. Such argument attempts to artificially limit the scope of the evidence presented at trial, and is inconsistent with our standard of review.

Neither the Amended Information[3] nor the verdict director[4] provided to the jury were limited to considering Defendant's behavior only during the twelve minutes she was physically out of the home. Further, while Defendant filed a Motion in Limine to restrict the evidence in the case to the "twelve[-]minute" period she now argues, Defendant never obtained a ruling as to that motion and the State made clear that it believed the jury could consider Defendant's conduct outside of that twelve minute period. At trial, Defendant did not object to the admission of evidence concerning her conduct after she returned home, and did not object when the State asked the jury to specifically consider such conduct during its rebuttal argument.

"[E]vidence is sufficient to support guilt if *any* reasonable inference supports guilt, even if other 'equally valid' inferences do not." **State v. Putney**, 473 S.W.3d 210, 219 (Mo. App. E.D. 2015). Viewing the evidence in the light most favorable to the verdict, including the totality of Defendant's behavior, there was sufficient evidence from which the jury reasonably could have found that even after Defendant returned home, she failed to pay attention and supervise Victim

---

[3] Count I of the Amended Information charged Defendant with the Class A felony of endangering the welfare of a child in the first degree, in that on or about March 2, 2022, in Greene County, Missouri, "the [D]efendant, who was responsible for the care of [Victim], knowingly acted in a manner that created a substantial risk to the life, body or health of [Victim], a child less than seventeen years of age, by leaving [Victim] unattended in a car seat, and this offense resulted in the death of the child."

[4] The complete language of Instruction No. 5 is included in the discussion of Defendant's Point III

while he was suffocating in the car seat that she left him in, and that such conduct resulted in the death of Victim.

Defendant nevertheless argues that the evidence was insufficient to show that Victim's death resulted from her actions, citing *State v. Usnick*, 585 S.W.3d 298 (Mo. App. W.D. 2019). In *Usnick*, the court reversed a defendant-mother's conviction for first-degree involuntary manslaughter after her child died during an "at-home, medically unattended birth," a day after the defendant-mother ingested methamphetamine and marijuana. *Id*. at 301. The defendant-mother later put the child in a plastic bag or container, but the evidence supported that the child had died prior to being placed in the bag or container. *Id*. at 308-09. While the child's death was determined to be a deficiency in oxygen, the specific reason remained unknown and could not be tied to a specific criminal act of the defendant-mother. *Id.* The State's experts could not "determine within a reasonable degree of medical certainty a clear cause of death," allowing that the death "could have been caused by the natural perils of child birth." *Id*.

We are not persuaded by Defendant's reliance on *Usnick*. Here, unlike in *Usnick*, there is no dispute as to the underlying cause of Victim's death, which was "[a]sphyxia due to strangulation by the straps and buckle of [Victim's] car seat." Here, unlike in *Usnick*, Victim's death can be directly connected to a particular criminal action of Defendant, that is, leaving him unattended in a car seat that was improperly buckled. Finally, unlike the defendant-mother in *Usnick*, who had no duty to have a medically-attended child birth, Defendant here had a legal duty to care for Victim.

Therefore, the evidence, viewed in the light most favorable to the verdict, was sufficient to support Defendant's conviction for endangering the welfare of a child resulting in death. Point I is denied.

In her second point, Defendant argues the trial court erred in overruling her motion for judgment of acquittal regarding her conviction for first-degree involuntary manslaughter, because the evidence was insufficient "that [Defendant] consciously disregarded a risk of asphyxiation and death when she left [Victim] unsupervised in his car seat[.]" Again, we disagree.

"A person commits the offense of involuntary manslaughter in the first degree if he or she recklessly causes the death of another person." §565.024. "A person "acts recklessly" or is reckless when he or she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." §562.016.4. "Recklessness resembles knowing conduct in one respect in that it involves awareness, but it is an awareness of risk, that is, of a probability less than a substantial certainty." ***State v. Harris***, 658 S.W.3d 135, 144 (Mo. App. E.D. 2022) (emphasis added). "Acts beyond unintentional or accidental conduct can amount to reckless behavior." ***State v. Thomas,*** 161 S.W.3d 377, 381 (Mo. banc 2005).

Defendant argues the evidence does not support that she consciously disregarded the risk of Victim asphyxiating in his car seat and dying. In making this argument, Defendant states that "[a]t no point in this case did [Defendant] indicate that she knew her omission to supervise [Victim] created an unjustifiable risk of death." However, the relevant inquiry is whether the jury could reasonably believe, based on the evidence, that Defendant was aware that her actions created a risk to Victim's life when she left him alone in her bedroom unattended. This inference is supported, at the very least, by Defendant's many false statements to Detective in which she

8

tried to conceal her actions, which is evidence of her consciousness of guilt. *Webb,* 569 S.W.3d at 541 (citing *State v. Buchli,* 152 S.W.3d 289, 297 (Mo. App. W.D. 2004) ("[E]xculpatory statements, when proven false, evidence a consciousness of guilt.")

Defendant further argues that an affirmative act, and not a mere failure to supervise, is required to support a first-degree manslaughter conviction in Missouri. In doing so, she points to *State v. Riggs*, 2 S.W.3d 867, (Mo. App. W.D. 1999) (reversing the defendant's involuntary manslaughter conviction because her failure to supervise her two-year-old child for 45 minutes, during which time said child wandered into a nearby pond and drowned, "did not make it substantially certain that her [child] would wander to his death.") and *State v. Beach*, 329 S.W.2d 712 (Mo. 1959) (reversing a mother's manslaughter conviction after her six-week-old infant died after mother failed to provide the infant food, nourishment, and medical attention.).

In *Riggs*, the defendant-mother's conduct was an omission to act, that is, her failure to supervise her child who wandered off the premises of their home. *Riggs*, 2 S.W.3d at 867. The court found the defendant-mother's conduct "included nothing intentional. She did not commit overt acts that would blatantly harm a child." *Id*. at 872. In *Beach*, the State's medical expert was unable to determine the immediate cause of the child's death, stating, "I cannot state…the primary cause of death." *Beach,* 329 S.W.2d at 715. The court held the State failed to provide the necessary causal connection between the defendant-mother's conduct and the child's death. *Id*. at 716.

Both of these cases are distinguishable. Unlike in *Riggs,* Defendant's affirmative actions—placing Victim in his car seat, improperly strapping him in, and then leaving him unattended—is sufficient evidence for the jury to reasonably believe that Defendant consciously disregarded a substantial and unjustifiable risk to Victim. Unlike in *Beach*, there is no dispute as

9

to Victim's primary cause of death, which was "[a]sphyxia due to strangulation by the straps and buckle of his car seat." Therefore, the evidence, viewed in light most favorable to the verdict, was sufficient to support Defendant's conviction for first-degree involuntary manslaughter. Point II is denied.

### III.     Point III: Trial Court Plainly Erred by Failing to Modify the MAI for Endangering the Welfare of a Child Resulting in Death.

In her final point, Defendant argues the trial court plainly erred in giving the verdict director for the charge of endangering the welfare of a child resulting in death (Count I), because the instruction was given in error, in that MAI-CR 422.10 instructs the jury to consider whether the "*defendant **caused***…death of a child," which does not conform to the substantive language of §568.045.2(3), which enhances the offense to a class A felony if the *"offense…[r]esults in* the death of a child." (emphasis added).

Defendant acknowledges she failed to preserve her claim of error because she failed to raise it at the instruction conference. "Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error, and said claim - no matter if it is statutory, constitutional, structural, or of some other origin - is evaluated by this Court's plain error framework without exception."[5] ***State v. Brandolese***, 601 S.W.3d 519, 530 (Mo. banc 2020) (emphasis omitted). Plain error review is discretionary under Rule 30.20.3. ***State v. Perkins***, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022). Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

---

[5] Unless otherwise noted, all rule references are to Missouri Court Rules (2024).

*State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) (quoting *Grado v. State*, 559 S.W.3d 888, 899-900 (Mo. banc 2018)). "[T]he appellant must show 'the error was outcome determinative.'" *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

"MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions." *State v. Michaud*, 600 S.W.3d 757, 760 (Mo. banc 2019). For that reason, "[i]nstructional error seldom rises to the level of plain error." *State v. Weyant*, 598 S.W.3d 675, 678 (Mo. App. W.D. 2020). "But even if the instructional error is evident, obvious and clear, the defendant must 'demonstrate that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice.'" *Brandolese*, 601 S.W.3d at 531. Under this standard, a defendant must demonstrate more than "mere prejudice," *State v. Myles*, 479 S.W.3d 649, 655 (Mo. App. E.D. 2015), but instead that "the error affected the jury's verdict." *State v. Marley*, 598 S.W.3d 204, 211 (Mo. App. W.D. 2020).

Here, Respondent offered Instruction No. 5, an unmodified version of MAI-CR 422.10, as the verdict director for Count I, without objection from Defendant. Submitted to the jury, Instruction No. 5 stated:

> As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about March 2, 2022, in the State of Missouri, the [D]efendant was responsible for the care of [Victim], and
>
> Second, the [D]efendant left [Victim] unattended in a car seat, and
>
> Third, that in doing so, the [D]efendant created a substantial risk to the life, body, or health of [Victim], and
>
> Fourth, that [Victim] was then less than seventeen years of age, and

11

Fifth, that the [D]efendant acted knowingly with respect to the facts and circumstances submitted in this instruction, and

Sixth, that the ***[D]efendant caused death to [Victim]***,[6] then you will find the [D]efendant guilty under Count 1 of endangering the welfare of the child in the first degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the [D]efendant not guilty of that offense under this instruction, but you must consider whether she is guilty of endangering the welfare of the child in the first degree under instruction no. 6.

(emphasis added).[7]

The crux of Defendant's argument is that "caused," as used in Instruction No. 5, and "[r]esults in," as used in §568.045.2(3), do not share the same meaning. Defendant argues the language in Instruction No. 5 is "far broader" than the language in §568.045.2(3), that she was prejudiced because "[Instruction No. 5] made the nuances of her defense to §568.045.2(3)'s enhancement element practically moot," and that this error was "evident, obvious, and clear." However, we are not convinced that Defendant's claim of instructional error facially establishes substantial grounds for believing that manifest injustice has resulted.

---

[6] In her brief, Defendant acknowledges that Instruction No. 5 is identical to the MAI-CR 422.10 pattern, which states, in relevant part:

> Fifth, that the defendant engaged in the above conduct as part of an act or series of acts performed by two or more persons as part of an established or prescribed pattern of activity [Describe act(s) which establish pattern of activity],) **(the defendant caused (physical injury) (serious physical injury) (death) to the child))**[.] (emphasis added).

[7] In this case, the fifth element in MAI 422.10 is the sixth element in Instruction No. 5 because the amended felony information added an additional element, alleging that Defendant "was responsible for the care of [Victim]," which is the first element in Instruction No. 5.

12

Instruction No. 5 is presumed to be valid because it is identical to MAI-CR 422.10. *Michaud*, 600 S.W.3d at 760. Further, Defendant's argument that "results in" and "caused" have fundamentally different meanings is unpersuasive. Because §568.045 does not define the term "results in," this Court must look to its dictionary definition to determine its plain and ordinary meaning. *Henry Cnty. v. Dunn*, 700 S.W.3d 320, 323 (Mo. App. S.D. 2024). Here, "results in" means "to **cause** (something) to happen."[8] "Cause" means "something that brings about an effect or a **result**."[9] We see no meaningful difference in these terms as commonly understood and as used in this context. Accordingly, Defendant has failed to facially establish substantial grounds for believing that manifest injustice has resulted, and we decline plain error review.

**Conclusion**

The Judgment of the trial court is affirmed.

MATTHEW P. HAMNER, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS

---

[8] *Cause*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/cause (last visited 8/26/2025) (emphasis added).

[9] *Results In*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/resultsin (last visited 8/26/2025) (emphasis added).